Reigle *v.* Sholly et al., Appellants.

154

Argued March 15, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Clarence D. Becker,* of *Becker & Ehrgood,* for appellants.

*Eugene D. Siegrist,* for appellee.

Opinion by Parker, J., June 24, 1940:

The claimant, John E. Reigle, seeks compensation for the loss of his right eye. On June 29, 1933, while employed by a stranger to this proceeding, he met with an accident that resulted in a traumatic cataract on that eye. As the obstruction grew the sight was gradually impaired so that on June 29, 1937, he did not have the use of the eye. He made claim for compensation on account of this accident, but it was denied on the ground that the application was not made within the period re-

quired by the statute. On the latter date, while in the course of his employment with Charles E. Sholly, he suffered a second accident to the same eye. Mortar and dirt were thrown into the eye, inflammation ensued, and as a result it was necessary to remove the eye in the following September. The claimant offered evidence tending to show that if the second accident had not occurred the sight of the eye would have been restored by an operation commonly performed, that he had therefore not lost the permanent use of the eye when the second accident occurred and that the removal of the eye was due to the injury received at the time of the second accident.

The referee found that the claimant had lost the use of his eye prior to June 29, 1937, and therefore was not entitled to recover compensation under §306 (c) of the Workmen's Compensation Act *(Quinn v. Amer. Int. Ship Bldg. Corp.,* 77 Pa. Superior Ct. 304), but that he had been totally disabled for a period of 11 3/7 weeks and awarded compensation for that period *(Novak v. State Work. Ins. Fund,* 113 Pa. Superior Ct. 555, 173 A. 827). The board reversed the referee and found that while claimant had lost the use of his eye previous to June 29, 1937, such loss was not permanent since sight might have been restored by an operation if the second accident had not occurred. On appeal the court of common pleas affirmed the board and entered judgment for claimant. We are all of one mind and are of the opinion that the judgment should be affirmed.

The questions raised by this appeal are whether the evidence is sufficient to support the finding of the board that an operation prior to the second accident would have restored claimant's sight and, if it is sufficient, then whether he must now be compensated for the loss of his eye.

The board has found as a fact, upon ample evidence, that Reigle did not have any use of his eye immediately before the second accident. The experts called by each

side agreed that an operation could not have been performed with hope of success or with safety after the second accident. There was also sufficient testimony to support the finding that the condition of the eye which necessitated its actual removal was caused by the second accident. Dr. John J. Light, a specialist in diseases of the eye, was called by claimant and was qualified to speak with reference to the claimant's condition by showing that prior to the second accident he had seen and talked to the claimant on the street and particularly noticed the cataract, that claimant had been in his office for medicine for a cold and that he had noted the condition of the eye at that time. On the evening of the second accident he removed the foreign matter from the eye and carefully noted the condition of the cataract. Claimant continued under his care until he removed the eye for him. He testified that he was able to determine the condition of the cataract unaffected by the second accident when he saw him on the day that the injury occurred. He stated his professional opinion as to the success of an operation in several ways and at different times on examination and cross-examination. He said: "There was a favorable chance for a successful operation for the removal of the cataract. . . . . . . If that cataract had been removed the day before [June 29, 1937], when the eye was quiet, I believe he would have had vision . . . . . . That cataract could have been removed from what I saw looking at him on the street."

A specialist, Dr. John M. Wotring, called by defendant, declined to say that the claimant did not have "an operable condition prior to" the second accident for he did not see claimant until several weeks thereafter. He also admitted that the condition that necessitated the removal of the eye "may have been lit up and aggravated by an added trauma."

The probable result of an operation was a matter peculiarly for expert advice and one on which the lay-

man is not competent to speak. The testimony of Dr. Light was clear and convincing and he had a good opportunity to observe the patient for the purpose of making his deductions. His testimonial qualifications were supported by his professional training and his opportunity to observe the claimant. We are satisfied that his testimony was sufficient to support the finding of fact on this subject as made by the board.

Assuming that claimant did not have the use of his right eye before June 29, 1937, but that vision could have been restored by an operation, was claimant as a matter of law entitled to compensation? By §306 (c) of the Workmen's Compensation Act (77 PS §513), special compensation is due for the loss of an eye and it is further provided that "permanent loss of the use of a hand, arm, foot, leg, eye, . . . . . . shall be considered as the equivalent of the loss" of such member. How can it be said that the loss is permanent if the use can be restored by an operation? If one had a broken leg or arm it would be useless for the time being, but one would not say in common parlance that such was a permanent loss of the member while the injured person refused or neglected to avail himself of surgical treatment if such treatment would restore the use of the member. While the removal of a cataract requires more skill and the patient would incur more risk than in the setting of a bone, it is a matter of common knowledge that cataracts are removed regularly with a minimum of danger. As the board said, the claimant had an eye in reserve. The sight of the eye could have been restored when the cataract was ripe for operation and he felt he needed it, and the loss was therefore not permanent. As we said in *Massett v. Armerford Coal M. Co.*, 82 Pa. Superior Ct. 579, 581: "An award under paragraph (c) of section 306 contemplates the *absolute* loss of one of the members mentioned in the paragraph or such a *permanent* injury as is the equivalent of its loss." (Italics supplied.) In our opinion the loss was not

permanent when sight could have been restored by an operation, and as the eye has now been actually removed and the second accident made the removal necessary, he becomes entitled to compensation under §306 (c).

Judgment affirmed.