542 A.2d 990

**JOYCE WESTERN CORPORATION, Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WILLIAM P. FICHTORN), Appellees.**

Supreme Court of Pennsylvania.

Argued March 8, 1988.

Decided May 27, 1988.

Terry L.M. Bashline, Baginski & Bashline, Pittsburgh, for appellant.

Leonard E. Price, Pittsburgh, for William P. Fichtorn.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

NIX, Chief Justice.

On November 23, 1977, appellee William P. Fichtorn was injured in the course of employment with appellant Joyce Western Corporation. The injury occurred while appellee, who was clearing a pipeline of vegetation, was struck in the right eye with a tree limb. Compensation was paid at the total disability rate of $199 per week from December 2, 1977, to January 10, 1978. Appellee returned to work on the latter date without loss in earnings.

On May 15, 1979, appellant filed a Petition for Termination with the Workmen's Compensation Appeal Board (the "Board").[1] Two decisions by the referee below, filed in 1981 and 1982, had been remanded by the Board to the

---

1. The Petition for Termination was later amended to be a Petition for Suspension, and was finally remanded to the referee by the Board as a Remanded Termination Petition. *See* § 413(a) of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772 (Supp.1987) (the "Act").

referee upon appeal by Mr. Fichtorn, with instructions to make specific findings of fact and conclusions of law. It is the third decision of the referee which forms the basis of the instant appeal.

The parties stipulated that the sole issue before the referee was "whether the claimant has sustained a specific loss of his eye." The referee issued the following conclusion of law: "Claimant has lost the use of his right eye for all practical intents and purposes," and pursuant thereto, ordered that claimant receive compensation from his employer or its insurance carrier for the specific loss of his eye.[2] The referee made the following findings of fact which go to the heart of the controversy:

7. After a careful review of the evidence, your Referee finds that while the claimant did sustain an injury to his right eye, which, uncorrected, has caused him to lose the use of said eye, the claimant could undergo surgery with only a minimal risk of failure which would restore sight to his right eye.

8. Your Referee finds that the claimant's specific loss has been caused by his own refusal to undergo corrective surgery.

9. Your Referee finds that the claimant's refusal to undergo corrective surgery is unreasonable under the circumstances. However, your Referee does not have the power to order claimant to undergo surgery.

The Board reviewed the referee's decision pursuant to appeals taken by each party. Although the Board recognized that the findings of fact quoted above do not support the referee's Order, it upheld the referee's Decision and Order on the theory that sufficient competent evidence had been adduced at the hearing to support the referee's finding of fact pertinent to the stipulated issue. The Board further concluded that the findings of fact in question are "super-

2. Appellee was awarded $199 per week for a period of 275 weeks, in addition to an appropriate healing period, not to exceed ten weeks, for the specific loss of his eye. See § 306(c)(7) of the Act, 77 P.S. § 513(7), (25).

fluous and have no bearing whatsoever on the referee's decision awarding a specific loss."

An appeal was taken by appellant to the Commonwealth Court, which affirmed the decision of the Board. The Commonwealth Court found that the stipulation eliminated the issue of the reasonableness of the corrective surgery, and that the Board properly determined that claimant sustained a "compensable loss of vision and use of his right eye." *Joyce Western Corporation v. Workmen's Compensation Appeal Board (William P. Fichtorn)*, 103 Pa. Cmwlth.Ct. 204, 210, 519 A.2d 1107, 1110 (1987). Appellant filed a petition for allowance of appeal, requesting this Court to consider whether specific loss benefits should be awarded when the injury sustained could be corrected by a reasonable surgical procedure. We granted the petition and now reverse.

■ There are three recognized types of compensable disability under the Workmen's Compensation Act (the "Act"): total, partial, and specific loss disability. Sections 306(a), (b), (c), 77 P.S. §§ 511, 512, 513 (Supp.1987). These categories have been enacted for distinct purposes. Total or partial disability benefits are awarded to employees who sustain work-related injuries and, as a result, either are unable to work, or witness a loss in earning power. Specific loss benefits, however, are payable without regard either to the employee's capacity to work or to his earning power, as long as the statutory criteria for these benefits have been satisfied. *Killian v. Heintz Div. Kelsey Hayes*, 468 Pa. 200, 205, 360 A.2d 620, 623 (1976). Appellee has alleged that he sustained a specific loss of an eye, which is covered by section 306(c)(7), 77 P.S. § 513(7) of the Act:

> For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:
>
> . . . . .
>
> (7) For the loss of an eye, sixty-six and two-thirds percentum of wages during two hundred seventy-five weeks. Section 306(c)(7), 77 P.S. § 513(7).

■ The statute further provides that "permanent loss of the *use* of an ... eye ... shall be considered as the equivalent of the *loss* of such ... eye." (Emphasis added.) Section 306(c)(24), 77 P.S. § 513(24). *Phillips v. Workmen's Compensation Appeal Board,* 16 Pa.Cmwlth.Ct. 6, 328 A.2d 925 (1974). Thus, the injured eye need not be destroyed in order for a claimant to receive a compensation award for specific loss. However, in order to prevail under the Act, a claimant must demonstrate that he has suffered "the permanent loss of use of the injured member for all practical intents and purposes." *Curran v. Walter E. Knipe & Sons, Inc.,* 185 Pa.Super. 540, 547, 138 A.2d 251, 255 (1958); *Thiele, Inc. v. Workmen's Compensation Appeal Board (Sulosky),* 83 Pa.Cmwlth.Ct. 286, 477 A.2d 51 (1984); *Neshaminy Construction Co. v. Workmen's Compensation Appeal Board (Martin),* 43 Pa.Cmwlth.Ct. 357, 402 A.2d 1111 (1979).

■ The loss of use of a member is not permanent where surgery will restore some or all of its function, and thus a specific loss will not be found. *See* Barbieri, 1 *Pa.Work. Comp.* § 5.21(21). Thus, the question of correctibility of the injury is properly at issue in a specific loss case. *See, e.g., Criner v. McKee Glass Co.,* 162 Pa.Super. 627, 60 A.2d 595 (1948).

There is no dispute in the instant appeal as to the fact that, in its present state, appellee's right eye is virtually useless. The testimony of the opthalmologists appearing for each party bears out this conclusion. Appellant argues, however, that since appellee's condition can be corrected by a reasonable surgical procedure, appellee has not sustained a specific loss, since the injury is not permanent, and thus, appellant should not be required to compensate appellee pursuant to the specific loss provisions of the Act.[3]

---

**3.** Appellant would be required to provide payment to appellee for the medical and surgical expenses incurred in correcting the injury and restoring appellee's eyesight. *See* Section 306(f)(1) of the Act, 77 P.S. § 531(1).

The issue of whether a claimant may receive compensation for the permanent loss of a body part when his condition can be remedied through reasonable surgery has never been specifically addressed by this Court. However, our recent decision in *Muse v. Workmen's Compensation Appeal Board,* 514 Pa. 1, 522 A.2d 533 (1987) provides useful guidance in our inquiry.[4]

In *Muse,* the claimant sustained a work-related injury, and was totally disabled therefrom. The claimant received appropriate disability benefits pursuant to section 306(a) of the Act, 71 P.S. § 511. Surgery was performed to correct the impairment and the claimant executed a final receipt terminating his benefits. Benefits were reinstated several years later, when it was discovered that the surgery caused the onset of another condition. The employer's physician recommended a second operation, which the claimant refused. Thereafter, the employer filed a petition for modification based on section 306(f) of the Act. That section provides in pertinent part as follows:

(4) In addition to the above service, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses. The cost for such hospital treatment, service and supplies shall not in any case exceed the prevailing charge in the hospital for like services to other individuals. *If the employe shall refuse reasonable services of duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal.* § 306(f)(4), 77 P.S. § 531(4) (Emphasis added).

4. In *Muse v. Workmen's Compensation Appeal Board,* the claimant did not allege a specific loss. Instead, Mr. Muse sustained a work-related injury diagnosed as a bilateral hernia and was compensated on the basis of total disability. Although *Muse* was concerned with a different section of the Act, its reasoning is helpful in analyzing the issue as to the reasonableness of the medical procedure that would be required to restore the function of the affected member of the body.

Our decision in *Muse* held that a claimant's refusal of reasonable medical services constitutes a forfeiture of disability benefits under the Act. *Muse v. Workmen's Compensation Appeal Board,* 514 Pa. at 8, 522 A.2d at 536. As this Court stated in *Muse:*

The purpose of the statute is to provide cure where it can reasonably be done by medical arts for the benefit of the claimant, that he not be handicapped in his health or his prospects for gainful and fulfilling employment.... Who can be cured and won't soon drys sympathy and wearies the most willing helpers. One ought not in any context avoid reasonable medical procedures to cure infirmities that are a burden to life and the prospects of life.

*Id.,* 514 Pa. at 8, 522 A.2d at 537.

The claimant herein asserts that the *Muse* analysis is inapplicable in the instant case for several reasons. First, it is asserted that the issue of reasonable corrective surgery was eliminated by the stipulation entered into between the parties. Second, it is suggested that *Muse* is inapplicable where, as here, no offer of medical services was promulgated, and thus, the claimant did not refuse services and therefore cannot be subject to the forfeiture provisions contained in Section 306(f) of the Act, 77 P.S. § 531(4).

■ As noted above, the parties agreed that the sole issue to be decided by the referee was whether the claimant sustained a specific loss of his eye. As such, claimant asserts that the possibility of correctibility by reasonable surgery is irrelevant to and has been eliminated by the stipulated inquiry. This reasoning is erroneous, since the correctibility of the injury is critical to determining whether the loss of the use of the eye is permanent and thus compensable as a specific loss. This is especially clear in light of the requirement that the specific loss must be "permanent" in order for a claimant to prevail under the Act. *See* Section 306(c) of the Act, 77 P.S. § 513. In short, whether claimant sustained a specific loss of his eye is dependent upon whether he sustained "the permanent loss

of use of the injured member for all practical intents and purposes." The loss of use of a member is not permanent where medical procedures will restore some or all of its function. Thus framing the issue as being whether claimant sustained a specific loss of his eye necessarily includes the issue as to whether reasonable medical procedures will restore some portion of the loss of function.

Appellee next challenges the applicability of *Muse* in the instant appeal on procedural grounds. In *Muse*, the employer sought to terminate the claimant's disability benefits on the theory that the claimant refused reasonable medical treatment that would have corrected his injury and would have enabled him to return to work. The statutory authority for the employer's action in this regard was Section 306(f)(4) of the Act, 77 P.S. § 531(4).

■ There is no dispute that Section 306(f)(4) of the Act applies to specific loss cases as well as to disability cases. The subsection provides as follows: "The provisions of this section shall apply in injuries whether or not loss of earning power occurs." Section 306(f)(4) of the Act, 77 P.S. § 531(4). *See also Hanyok v. Pennsylvania Coal & Coke Corporation*, 155 Pa.Super. 194, 38 A.2d 536 (1944). However, appellee seeks to avoid the *Muse* inquiry by asserting that since he was not specifically offered medical treatment by his employer, he did not "refuse reasonable services" and thus the above section is inapplicable in this case. This argument is devoid of merit. There is no longer a statutory requirement that the employer actually *tender* the services to the employee before the forfeiture provisions of Section 306(f)(4) of the Act, 77 P.S. § 531(f)(4), apply. While appellee's tender theory may have been valid prior to the 1972 Amendments to the Act, it is clear that the tender requirement is no longer viable, as it has been eliminated by the legislature.

Prior to the 1972 Amendments, Section 306(f) of the Act read in pertinent part as follows:

If the employe shall refuse reasonable services rendered by duly licensed practitioners of the healing arts, surgi-

cal, medical and hospital services, treatment, medicines and supplies, *tendered to him by his employer*, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal.... The provisions of this section shall apply in injuries where no loss of earning power occurs. (Emphasis added.)

1915, June 2, P.L. 736 art. III, § 306(e); 1919, June 26, P.L. 642, § 1; 1927, April 13, P.L. 186, § 1; 1937, June 4, P.L. 1552, § 1. Renumbered § 306(f) and amended 1939, June 21, P.L. 520, § 1; amended 1945, May 18, P.L. 671, § 1; 1949, May 14, P.L. 1369, § 1.

However, as noted above, the 1972 Amendments to the Act eliminated the tender requirement previously contained in Section 306(f). The Section now simply contemplates an employee's refusal of reasonable services. *See* 306(f)(4) of the Act, 77 P.S. § 531(4). Reading this section in conjunction with Section 306(f)(1) of the Act, 77 P.S. § 531(1), it is clear that the legislature is maintaining the employer's obligation to pay for reasonable medical treatment, while imposing a duty on the employee to avail himself of these services. Thus, no affirmative showing of having tendered medical services need be made before an employer may invoke the forfeiture provisions of Section 306(f)(4) of the Act, 77 P.S. § 531(4).

Alternatively, appellee suggests that forfeiture of benefits under this Section may be ordered only in a termination proceeding, rather than in an entitlement proceeding, which was conducted in this case. This argument ignores the essential distinction between a disability case and a specific loss case.

■ In a disability matter, an employee sustains a work-related injury and is awarded compensation for that period during which he is unable to work. Thereafter, the employer may seek to terminate disability benefits on the authority of Sections 306(a) and 306(b) of the Act, 77 P.S. §§ 511, 512, which specifically provide that compensation shall be paid so long as the disability continues. A termination proceed-

ing will then be commenced, perhaps on the basis of Section 306(f)(4) of the Act, 77 P.S. § 531(4), or simply on the ground that the employee is no longer disabled. In a specific loss case, there is no need for a subsequent proceeding after a determination that a qualifying specific loss has been sustained. However, since the legislature included specific loss cases within the context of Section 306(f)(4) of the Act, 77 P.S. § 531(4), it is clear that the issue of an employee's refusal of reasonable medical services may be considered at the appropriate forum, *i.e.*, at the entitlement hearing. Thus, appellee's objections to the applicability of *Muse* in this appeal are without merit.

The reasoning in *Muse* is persuasive in the specific loss context as well as in disability cases. If an injury can be corrected with reasonable medical treatment, it is axiomatic that the use of the injured body part is not permanently lost. A claimant who declines to avail himself of reasonable medical or surgical procedures to ameliorate his condition should not at the same time be permitted to collect benefits for a permanent loss. The Act was not designed to permit employees to elect between compensation and cure.[5]

The suggested surgery in this case was a cataract extraction. The observations of the Superior Court in a 1940 case dealing with substantially similar issues are pertinent:

> By § 306(c) of the Workmen's Compensation Act (77 PS § 513), special compensation is due for the loss of an eye and it is further provided that "permanent loss of the use of a hand, arm, foot, leg, eye, ... shall be considered as the equivalent of the loss" of such member. How can it be said that the loss is permanent if the use can be restored by an operation? If one had a broken leg or arm it would be useless for the time being, but one would not say in common parlance that such was a permanent loss of the member while the injured person refused or ne-

5. Pursuant to 77 P.S. § 531(1), the employer would be required to pay for the employee's medical/surgical expenses. If the surgery does not restore the use of the injured member, the employee would be well within his rights under the Act to seek specific loss benefits at that juncture.

glected to avail himself of surgical treatment if such treatment would restore the use of the member. While the removal of a cataract requires more skill and the patient would incur more risk than in the setting of a bone, it is a matter of common knowledge that cataracts are removed regularly with a minimum of danger.

*Reigle v. Sholly*, 140 Pa.Super. 153, 157, 14 A.2d 166, 167 (1940).

In the record in the instant case, however, the Board-certified ophthalmologist, Dr. Yockey, testified that claimant's vision could be restored if he underwent a cornea implant, but that there was some risk of losing all sight in that eye if such a procedure was undertaken. If the referee on remand accepts this testimony, it may well justify a finding that the proposed medical procedures would be unreasonable. One may quite properly determine that even substantially impaired vision in one eye is preferable to the possibility of complete loss of the use of that member.

 The issue of what constitutes "reasonable" surgery in a particular case will, of course, constitute a factual inquiry which will be conducted by a referee. If the evidence establishes that the recommended surgery involves *minimal risk* to the patient and offers a *high probability* of success, the proposed surgery is reasonable,[6] and specific loss benefits are properly denied upon claimant's rejection of the specified procedure. *See Muse v. Workmen's Compensation Appeal Board*, 514 Pa. at 6, 522 A.2d at 536.[7] Factors which the claimant may adduce to rebut the conclusion of reasonable treatment include the following:

[T]he extent of the pain, suffering, inconvenience, etc., entailed by the operation in connection with the benefit

**6.** It is self-evident, however, that procedures which are generally viewed as life threatening are *per se* unreasonable.

**7.** As noted in *Muse,* the Act requires the employer to demonstrate before the referee that the recommended medical treatment is reasonable. At the conclusion of this presentation, the claimant may either rest his case, on the theory that the employer has failed to meet his burden, or he may adduce evidence to rebut the reasonableness of the proposed treatment in his particular case. *Muse, supra,* 514 Pa. at 7, 522 A.2d at 536.

that will probably result from it, whether the latter is such as reasonably to justify the former.

*Hanyok v. Pennsylvania Coal and Coke Corporation,* 155 Pa.Super. at 199, 38 A.2d at 539.

Accordingly, we reverse the order of the Commonwealth Court and remand the matter to the Board with direction that a hearing be conducted for further proceedings consistent with this opinion.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

LARSEN, Justice, dissenting.

I dissent on the basis of the opinion of the Commonwealth Court, 103 Pa.Cmwlth.Ct. 204, 519 A.2d 1107 (1987) (per Barbieri, S.J.; Crumlish, P.J. and Colins, J.). As that court stated, "we agree with the [Workmen's Compensation Appeal] Board that we do not have before us a properly presented issue [of refusal of reasonable services] under Section 306(f)...." 77 P.S. § 531(4). 103 Pa.Cmwlth.Ct. at 208, 519 A.2d at 1109. The stipulation of the parties precludes our consideration of that issue.

PAPADAKOS, J., joins in this dissenting opinion.