613 A.2d 626

TEXTRON, INC. and Aetna Life and Casualty,
Insurance Carrier, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL
BOARD (DECAPRIA), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 12, 1992.

Decided Aug. 4; 1992.

Michael J. Wagner, for petitioner.

No appearance for respondent.

Before DOYLE and FRIEDMAN, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

Textron, Inc. (the employer) appeals an order of the Workmen's Compensation Appeal Board (the Board) which affirmed the decision of a referee denying the employer's modification petition pertaining to benefits paid to James DeCapria (the claimant). We affirm.

The claimant was injured while at work on July 26, 1988, and began collecting benefits for temporary total disability pursuant to a notice of compensation payable. The employer filed a modification petition on January 3, 1989, alleging that the claimant's benefits should be suspended or terminated because of his refusal to submit to surgery. Both sides introduced depositions of medical experts. The referee specifically credited the claimant's medical expert and found that the claimant's disability would not improve any more as a result of the proposed surgery than it would from the conser-

vative course of treatment which the claimant was undergoing. The referee, therefore, concluded that the claimant did not refuse reasonable medical services. Based upon this conclusion the referee denied the employer's petition. The employer then sought review from the Board. While that matter was pending, the employer also filed a petition to introduce after-discovered evidence. The Board refused to consider the after-discovered evidence and affirmed the referee's decision. This appeal followed.

Our scope of review is limited to determining, *inter alia*, if an error of law was committed and that all necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. As none of the four allegations of error of the employer warrant a reversal of the Board's order, we affirm.

Section 306(f) of The Pennsylvania Workmen's Compensation Act (the Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(4), provides in pertinent part, "If the employe shall refuse reasonable services ... he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal." In this case the employer has argued that the claimant's benefits should be suspended or terminated because the claimant refused to undergo surgery to repair a herniated disc which resulted from the work-related injury. The employer offered the expert testimony of Dr. John S. Kruper, a board certified orthopedic surgeon. He testified that the claimant has suffered a herniated disc at the level of C6–7 and was disabled as a result of this injury. He testified that the claimant was not responding to conservative treatment and that the proposed surgery was the claimant's only hope of recovery. He was asked about his prognosis concerning the claimant's ability to return to work and responded, "Given the patient having had surgery which was successful, the patient should be able to return to work fully recovered and he should not have restrictions as far as that job description is concerned." (Deposition of Dr. Kruper, 11/2/89, pp. 19–20.) The claimant offered the testimony of Dr. Nicholas W. DiCuccio, a board certified

surgeon who was the claimant's treating physician. He agreed with Dr. Kruper that the claimant was disabled as a result of the herniated disc at C6–7. He testified that he began treating the claimant after the injury and used conservative treatment. He eventually sent the claimant to Dr. Scott Martin, a neurosurgeon, for evaluation of possible surgery for the injury. Dr. Martin recommended that surgery be performed. Dr. DiCuccio testified that he discussed the surgery with the claimant. For a number of reasons, the claimant did not want to undergo surgery. Dr. DiCuccio opined that both the conservative treatment being used and the proposed surgery were reasonable courses of treatment. He testified that the claimant's tricep muscle was atrophied which was indicative of nerve damage resulting from the herniated disc. Dr. DiCuccio stated that nerve damage was not repairable and that the surgery, if performed, would essentially relieve the claimant's pain. He then stated:

> But the short and the long of it is that once you continue to therapy, either have the surgical approach, or if you continue with physical therapy and medicine, down at the end of five years, the end result from either approach is going to be the same. They will roughly be the same.

(Deposition of Dr. DiCuccio, 2/19/90, pp. 14–15.) Dr. DiCuccio went on to explain:

> Comparing [both courses of treatment], at the end of five years, they are all the same, everybody has about the same amount of pain, about the same amount of neurologic deficit, and about the same amount of end result. The people get a much better and a quicker response by the surgical approach initially. They get an instantaneous relief usually of the discomfort, because it takes the nerve root pressure off. But once the spine settling and all the other problems that occur with surgery or the chemical surgery in which the disk has been dissolved and the spine settles, then all the other additional problems occur with some more nerve root compression and pinching of the nerve, and eventually these people start to get their pain back. So they end up with

some degree of pain, and the ones who didn't have any surgery lose a fair amount of their discomfort.

(*Id.* at 19.) He acknowledged that the claimant "is starting to get to the area that might be the plateau that he is going to be with the rest of his life." (*Id.* at 17.) Dr. DiCuccio was then asked his opinion of the result had the claimant undergone the surgery in September of 1989. He responded:

My feeling was that he had about an 80 percent chance of relief of pain and discomfort in his neck and his back region. But this would probably be a 50/50 result or a toss-up as to whether in the long run it would really be of any benefit to him."

(*Id.* at 20.)

The referee specifically credited the testimony of Dr. DiCuccio, referring to the portion of his opinion that either course of treatment would lead to the same end result. Based thereon, the referee denied the employer's petition and as previously mentioned, the Board affirmed.

■ The employer first argues that because the referee credited Dr. DiCuccio's testimony, a portion of which noted that the proposed surgery was a reasonable procedure under the circumstances, the referee was required as a matter of law to grant the employer's petition. In this regard, the employer relies upon *Muse v. Workmen's Compensation Appeal Board (Western Electric Co.)*, 514 Pa. 1, 522 A.2d 533 (1987), where the Supreme Court held that Section 306(f) required focus upon the reasonableness of the services offered. The employer argues that the present case is controlled by *Muse* because, in both, the record was devoid of any evidence that the proposed services were unreasonable. We believe that the employer reads *Muse* too narrowly.

In *Muse*, the claimant refused to undergo surgery and the employer sought to terminate benefits. At the hearing, only the employer presented evidence consisting of a doctor's testimony that the surgery should be successful, thereby allowing a complete recovery. The doctor described the risk factors involved which essentially were present in any surgical proce-

dure. The referee, relying upon those risk factors, concluded as a matter of law that the employer had failed to prove the claimant in *Muse* refused reasonable medical services. The court held that the referee's analysis was erroneous, stating, "Something more was required. Otherwise all surgical procedures would be presumptively unreasonable, a conclusion that would effectively vitiate the statute." *Id.*, at 6, 522 A.2d at 536. The court went on to explain:

> The record developed before the referee consisted solely of uncontested evidence supporting a conclusion that the surgery was reasonable. Had the claimant offered countervailing evidence that the surgery was unreasonable, or that he wasn't a good candidate for this surgery given his condition, the referee may have had a basis upon which to deny the employer's petition.

*Id.* at 6–7, 522 A.2d at 536.

In *Joyce Western Corp. v. Workmen's Compensation Appeal Board (Fichtorn)*, 518 Pa. 191, 201, 542 A.2d 990, 995 (1988), the court stated that "[t]he [Workmen's Compensation] Act was not designed to permit employees to elect between compensation and cure." The claimant in the present case made no such election. The testimony of Dr. DiCuccio, specifically credited by the referee, showed that surgery would not cure the claimant's disability. He offered the opinion that the claimant's condition would be the same whether the claimant had the surgery or continued with the conservative treatment.[1] Even reading Dr. DiCuccio's testimony in the light most favorable to the employer, we do not believe a fifty percent chance of long term benefit renders surgery reasonable. While it is true that Dr. DiCuccio opined that the surgery was reasonable, we must read that testimony in the context of which it was offered. His testimony was that either alternative was reasonable in that both would lead to the same end result. In terms of an analysis of Section 306(f) of the Act, surgery offering no significant improvement is not reasonable

---

1. There was no evidence in the record that the claimant was less than conscientious in pursuing the recommended physical therapy; in fact, all of the evidence was to the contrary.

in the context of determining whether the refusal of that surgery requires a forfeiture of benefits.

The employer next argues that the claimant's reasons for refusing surgery were insufficient to allow his refusal. When discussing the possibility of surgery, the claimant indicated to Dr. DiCuccio that he would not have the surgery unless he could guarantee a successful result. In *Donton v. Workmen's Compensation Appeal Board (Prestolite Battery)*, 125 Pa.Commonwealth Ct. 324, 557 A.2d 450 (1989), we held that requiring such a guarantee was unreasonable. The claimant also expressed a fear of surgery in general. As already mentioned, it has been held that such fears alone do not justify refusal. *Muse.* Having said that, the claimant's reasons for refusing surgery are simply irrelevant when the proposed surgery itself is not reasonable under the forfeiture provision of Section 306(f).

The employer also argues that both the referee and the Board erred in sanctioning the continuance of conservative treatment when surgery offered the only hope of recovery. The employer's argument would have merit if that were the case, but Dr. DiCuccio testified that the claimant's long term result would be the same with either alternative.

Finally, the employer argues that the Board erred in refusing to consider a report of Dr. DiCuccio prepared after the hearings before the referee. That report indicated that the claimant was unable to do any work in his present condition. We agree with the Board's statement that this report was merely corroborative of Dr. DiCuccio's testimony. As this matter is within the sound discretion of the Board, *Cudo v. Hallstead Foundry, Inc.*, 517 Pa. 553, 539 A.2d 792 (1988), we do not believe the Board committed reversible error in refusing to consider the report.

Affirmed.

## ORDER

NOW, August 4, 1992, the order of the Workmen's Compensation Appeal Board, dated September 25, 1991, at No. A90-1315 is affirmed.