618 A.2d 1199

**STEEL CITY PAINTING COMPANY and the PMA Group, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (PLATKO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 28, 1992.

Decided Dec. 17, 1992.

James D. Strader, for petitioners.

Melvin L. Vatz, for respondent.

Before DOYLE and FRIEDMAN, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

This is an appeal by Steel City Painting Company (Employer) from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a decision of the referee denying Employer's petition to modify, terminate or suspend the benefits of Larry Platko (Claimant) under The Pennsylvania Workmen's Compensation Act (Act).[1]

Claimant was employed by Employer as an industrial painter/sandblaster when he injured his back in a work-related incident on May 17, 1988. Claimant began to receive benefits under the Act and also began a long course of treatment which failed to produce a substantial improvement in his condition. As a result of this lack of improvement, John Moossy, M.D., Claimant's treating physician, recommended in August 1988 that Claimant undergo a surgical procedure on his spine. Claimant, however, refused to have the surgery.

Employer filed a petition to modify, terminate or suspend benefits in June 1989 alleging that Claimant had received a medical release to return to his pre-injury position. Subsequently, Employer amended its petition to include an allegation, based upon the testimony of Claimant's treating physician, that Claimant had refused reasonable medical treatment and that his benefits should therefore be forfeited pursuant to Section 306(f)(4) of the Act, 77 P.S. § 531(4).

The referee denied Employer's petition in its entirety, concluding that Employer failed to prove that Claimant's condition had resolved itself completely and that although Employer had shown that Claimant's condition had improved somewhat and that there was work available to Claimant, Employer had failed to provide Claimant with proper notice of the job.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

The referee also concluded that the Claimant's refusal to undergo the recommended surgery was not unreasonable. Employer appealed the referee's decision to the Board, raising only the issue of the reasonableness of Claimant's refusal to undergo the recommended surgery. The Board affirmed the referee and appeal to this Court followed.[2]

The single issue presented by Employer to this Court is whether the referee erred as a matter of law by focusing on the reasonableness of the Claimant's refusal to undergo medical treatment rather than the reasonableness of the medical treatment itself in concluding that Claimant's benefits were not forfeited under Section 306(f)(4) of the Act.[3] Employer argues that under our Supreme Court's decision in *Muse v. Workmen's Compensation Appeal Board,* 514 Pa. 1, 522 A.2d 533 (1987), the proper focus is on the latter and that the referee's analysis was improperly focused on the reasonableness of the Claimant's refusal.

The pertinent findings made by the referee in reaching his conclusion are as follows:

## FINDINGS OF FACT

. . . .

9. Dr. John Moossy, M.D., a neurosurgeon . . . testified by way of deposition on December 15, 1989 . . . that he recommended to the Claimant on three separate occasions that he have [surgery]. The doctor explained the operation and stated that he explained the risks to the Claimant. The

**2.** Our scope of review is limited to a determination of whether constitutional violations have occurred, errors of law have been committed or whether the necessary findings of fact are supported by substantial evidence. *Czap v. Workmen's Compensation Appeal Board (Gunton Corp.),* 137 Pa.Commonwealth Ct. 612, 587 A.2d 49 (1991), *petition for allowance of appeal denied,* 527 Pa. 654, 593 A.2d 425 (1991).

**3.** Section 306(f)(4) of the Act provides, in pertinent part, as follows: If the employe shall refuse reasonable services of duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal.
77 P.S. § 531(4).

doctor stated that those risks in the case of spinal surgery are: complication relating to anesthesia which could result in an allergic reaction on one hand to death on the other; the risk of paralysis because the surgeon would be working in [sic] millimeters [of the spine] and any damage to the spinal cord could result in paralysis from that level on down (hands, legs and trunk); and, a risk of nerve root damage which would result in persistent or increased pain. He stated that risks of a more generic nature would be the risks of blood transfusion and potential complications, and the risk of infection. . . . The doctor stated that he believed that there would be an 80 percent chance of a good outcome of an operation which would result in a decrease or complete absence of pain and a return of strength. However, he added that in 10 percent of the cases there is no difference after surgery; that in 5 percent there is an increase in pain; and an additional 5 percent where it could be anything from a catastrophe of the patient dying to a worsening of pain or increased weakness or a weakness of a more global nature.
. . . .
12. The Referee accepts the testimony of Dr. Moossy as more credible than that of [Employer's medical expert]. . . .
15. Dr. Moossy did testify that he recommended surgery to the Claimant on three separate occasions and that the Claimant declined in favor of more conservative medical measures. . . . Did the Claimant unreasonably decline reasonable medical care when he refused the operation in favor of more conservative medical measures. According to Claimant's doctor it was a serious operation where the surgeon enters to the front of the patient's throat and removes the diseased or damaged disk [sic] piecemeal. . . . It must ... be noted that the Claimant's neurosurgeon indicated that the surgeon would be working [within] millimeters [of Claimant's spine]. True, he stated there would be an 80 percent chance of good results. However, the doctor also stated that there was no guarantee the Claimant would be within the 80 percentile and, if the Claimant per chance happened to fall within the 20 percentile, he would either

suffer more pain then [sic] he currently had to the degree of paralysis from the neck down or even death....

16. ... It is to be noted also, that the physician relied on by the defense made no recommendation of surgery.... One would think, under all the circumstances of this case, that before one would undergo such an [sic] serious invasive procedure, the recommendations of two or three Board certified experts would be obtained.

17. Under the facts and circumstances and testimony presented in these proceedings, the Referee cannot reasonably find that this Claimant refused reasonable medical care.

. . . .

## CONCLUSIONS OF LAW

. . . .

4. Claimant's declining of a serious invasive procedure was not unreasonable under the evidence presented.

 As Employer points out, the focus of Section 306(f)(4) is on the reasonableness of the services offered. *Muse,* 514 Pa. at 7, 522 A.2d at 536. Where the evidence establishes that the recommended surgery involves minimal risk to the patient and offers a high probability of success, the proposed surgery is reasonable. *Joyce Western Corp. v. Workmen's Compensation Appeal Board,* 518 Pa. 191, 542 A.2d 990 (1988). Further, the question of whether the proposed services are reasonable is a question of fact to be determined by the referee. *Id.* at 202, 542 A.2d at 996; *Donton v. Workmen's Compensation Appeal Board (Prestolite Battery),* 125 Pa.Commonwealth Ct. 324, 557 A.2d 450 (1989).

While it is arguable that the tenor of the referee's findings suggests that he focused on the reasonableness of Claimant's decision rather than the reasonableness of the suggested procedure, this does not change the fact that he also expressly found in Finding of Fact No. 17 that the medical services were unreasonable. We therefore conclude that the referee engaged in the correct inquiry.

 This does not end our inquiry, however, because, as we noted above, the determination of whether a proposed proce-

dure is reasonable or not is a question of fact, *Donton,* and thus we must determine whether this crucial finding was supported by substantial evidence. Our review of the record indicates that there is substantial evidence to support Finding of Fact No. 17.

The only evidence presented which addressed the suggested procedure was the testimony of Dr. Moossy, Claimant's physician. As summarized by the referee in Findings of Fact Nos. 9 and 15, Dr. Moossy testified that although the suggested operation was a serious procedure, there was an 80 percent chance of success. Deposition of Dr. Moossy at 20–21. Further, Dr. Moossy testified that in a further 10 percent of the cases, no change at all was experienced. *Id.* Thus, contrary to the statement of the referee in Finding of Fact No. 15, there was a 90 percent chance that Claimant would wind up in either better condition or at least no worse a condition if he underwent the surgery.

The risks inherent in the suggested surgery were, however, substantial and much greater than those inherent in an ordinary surgical procedure. Dr. Moossy stated that, in addition to the risks inherent in any surgery, Claimant would also run the risk of permanent paralysis of his hands, legs and trunk due to the close proximity to his spine in which the surgeon would be working. Deposition of Dr. Moossy at 18–19. While the surgery's probability of success is relatively high, the risks presented are far from minimal. To paraphrase the Supreme Court's decision in *Joyce Western,* one may quite properly determine that even the back pain Claimant continues to suffer without the surgery is preferable to the possibility of paralysis from the waist down. We conclude that this fact alone is sufficient to support the referee's finding that the proposed medical services were unreasonable.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, December 17, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.