630 A.2d 964

**SOUTHWEST HEALTH SYSTEMS/WESTMORELAND HOME HEALTH, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (PETERSON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 11, 1993.

Decided Aug. 18, 1993.

---

684

Harry W. Rosensteel, for petitioner.

Mary E. Baloh, for respondent.

Before COLINS and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Southwest Health Systems/Westmoreland Home Health (Employer) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision granting Lois Peterson (Claimant) compensation benefits for the permanent loss of the use of her left eye.

Claimant was employed as a nurse's aide caring for homebound persons. On June 6, 1988, a combative patient suffering from Alzheimer's Disease struck Claimant in the left eye. Claimant sought medical treatment a week to ten days later when her eye closed shut preventing her from driving. (R.R. 55A–56A) After an initial visit to Dr. Devolli at Derry Medical Associates, Claimant was referred to an ophthalmologist, Dr. John S. Palaika, who treated her for a superficial laceration and secondary keratitis.[1] From June 18, 1988 to June 28, 1988, Claimant was paid compensation for total disability pursuant to a Notice of Compensation Payable dated July 19, 1988. She subsequently returned to work at her regular job on June 29, 1988. (R.R. 48A–49A)

After treating Claimant for approximately one month, Dr. Palaika became concerned that she was not healing as well as expected and referred Claimant to a corneal specialist, Dr. Frank E. Cignetti. Dr. Cignetti testified that Claimant not only lost the use of her left eye for all practical intents and purposes, but that the injured left eye interfered with the function of the right eye. (R.R. 96A) Additionally, Dr. Cignetti testified that a corneal scar was the source of Claimant's vision problems. (R.R. 98A) In regard to the corneal scar, Dr. Cignetti opined that the scarring was a product of a herpes simplex infection caused by the trauma. (R.R. 92A–113A)

On November 1, 1989, Claimant filed a claim petition alleging the specific loss of her left eye. In support of her claim petition for benefits, Claimant submitted the report and deposition testimony of Dr. Cignetti as well as the report of Dr.

---

1. Keratitis is simply defined as inflammation of the cornea. Stedman's Medical Dictionary 820 (25th ed. 1990).

Palaika.[2] The referee issued a decision and order on August 30, 1991 wherein she granted Claimant 275 weeks of specific loss benefits. The referee made 18 findings of fact including the following:

> *Ninth:* This Referee finds, based on the credible reports of Dr. Palaika, that the Claimant suffered a superficial laceration of the left cornea due to the June 6, 1988 injury. This Referee does not find that Dr. Palaika had mistaken a lesion from herpes simplex infection for a laceration. The Claimant, whom this Referee finds credible, had noted no problems with her left eye or her vision prior to the June 6, 1988 injury. Dr. Cignetti testified the Claimant would have noted problems with her vision had the herpes simplex infection been active prior to the June 6, 1988 injury.
> *Tenth:* This Referee finds, based on the credible and *unequivocal* opinion of Dr. Cignetti that the trauma (laceration) caused by the June 6, 1988 work injury triggered the herpes simplex infection which resulted in the central scarring of the left cornea. Dr. Cignetti's opinion is supported by the Claimant's history of no visual problems prior to the June 6, 1988 injury. Furthermore, none of the reports of the other ophthalmologists addressed the relationship of the herpes infection to the June 6, 1988 injury or the cause of the viral infection.

> . . . . .

> *Twelfth:* This Referee finds the loss of the use of the left eye for all practical intents and purposes became permanent on October 2, 1990. . . . This Referee also finds that a corneal transplant does not constitute reasonable and necessary surgical treatment of the June 6, 1988 injury, as the surgery does not carry a high probability of success. The transplant surgery, based on Dr. Cignetti's credible testimony, does carry a 70% overall success rate. However, due to the history of the herpes infection, the Claimant incurs an increased risk of rejection and a 50% chance of recurrence of the herpes infection which could result in scarring of the

---

2. Employer submitted the medical reports of two ophthalmologists, Dr. Maher and Dr. Vey.

transplanted cornea. Therefore, this Referee does not find the surgery to have a high probability of success.

Based on her findings of fact, the referee made the following relevant conclusions of law:

*First:* The Claimant has sustained her burden of proof that she had sustained, as of October 2, 1990, a permanent loss of the use of the left eye for all practical intents and purposes, due to the June 6, 1988 injury.

*Second:* The Claimant also sustained her burden of proof that corneal transplant surgery, in her case, does not constitute reasonable surgery.

Upon appeal to the Board, employer alleged that Claimant did not establish the permanency of the loss of vision. The Board determined that the referee's findings were properly supported by substantial competent evidence. Hence, by opinion and order, the Board affirmed the referee's decision.

Before us,[3] Employer argues that Claimant did not meet her burden of proving that the work related injury caused a herpes infection, which in turn caused the corneal scarring. Employer asserts that the referee's finding that the trauma caused the subsequent herpes infection is not supported by competent, unequivocal medical testimony. Further, Employer argues that it was error for the referee and the Board to conclude that the Claimant met her burden of proving that the work related injury resulted in a permanent loss of the use of the left eye for all practical intents and purposes. Employer contends that corneal transplantation was available and offered a high probability of restoring Claimant's vision without great risk; thus, the loss was not permanent.[4]

3. Our scope of review in a workers' compensation proceeding is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact were supported by substantial evidence. *Ashe v. Workmen's Compensation Appeal Board (American Steel & Aluminum Corp.),* 140 Pa.Commonwealth Ct. 615, 594 A.2d 824 (1991).

4. Although it is employer's appeal, Claimant now raises the issue of whether reasonable attorney fees should be assessed against employer

Regarding the causation issue, Dr. Cignetti, a Board certified ophthalmologist as well as a corneal specialist, testified in pertinent part as follows:

Q. Well, Doctor, for the record, can you state with a reasonable degree of medical certainty, based upon the history that Lois Peterson has given to you, that the herpes simplex virus in this particular case was either caused by or aggravated by or, if it had been dormant, was made active by the occurrence of trauma to her left eye on June 6, 1988?

. . . . .

A. What I can state is that trauma is a known trigger for herpes simplex infection. I have a history that the patient had trauma which then resulted in a lesion that was difficult to heal, and at that point she was referred to me and at that point I made a diagnosis of herpes infection. My belief is that the trauma was probably the trigger in this particular case.

Q. Well, Doctor, can you state that not only probably was it but with just a reasonable degree of medical certainty, based upon the history that you've been given, that it was?

A. Based on the history that I have, yes, I can state that with a reasonable degree of medical certainty.

(R.R. 91A–92A)

Additionally, we note that during cross examination Dr. Cignetti opined that the corneal scar was a product of the herpes infection not the original trauma. (R.R. 113A–114A)

 The referee accepted Dr. Cignetti's testimony as credible and made findings accordingly. The credibility of witnesses and the weight to be accorded their testimony is within the province of the referee; the referee may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Kraemer v. Workmen's Compensa-*

due to unsuccessful successive appeals. We note that Claimant failed to properly preserve this issue by not appealing the Board's decision. Therefore, this issue has been waived. Furthermore, a party cannot use another party's appeal as a conduit to raise his own issue. *USX Corp. v. Workmen's Compensation Appeal Board (McDermott),* 152 Pa.Commonwealth Ct. 174, 618 A.2d 1150 (1992).

*tion Appeal Board (Perkiomen Valley School District),* 82 Pa.Commonwealth Ct. 469, 474 A.2d 1236 (1984). We also note that equivocality of medical testimony is to be judged upon review of the entire testimony in workmen's compensation proceedings. *Carpenter Technology Corp. v. Workmen's Compensation Appeal Board (Wisniewski),* 144 Pa.Commonwealth Ct. 72, 600 A.2d 694 (1991). Therefore, even though Dr. Cignetti recognized during cross examination that other events could possibly have caused Claimant's herpes infection, this does not render his unequivocal opinion on direct examination that the June 6, 1988 accident led to the specific loss, equivocal.

Although employer is correct in noting that "[t]he mere existence of a temporal relationship between a recent event at work and an injury is insufficient to establish a casual relationship", that argument is not applicable here. Since, in addition to the temporal relationship herein, there is the unequivocal testimony of Dr. Cignetti that the work related trauma triggered the herpes infection. Hence, the testimony of Dr. Cignetti is competent evidence, which the referee believed thus providing substantial evidence to support the referee's findings.

■ In regard to the effectiveness of performing a corneal transplant, Dr. Cignetti testified that the literature on the procedure shows that approximately 1/2 of the patients who have had herpes infections in the past will develop a recurrent herpes infection in the corneal transplant. (R.R. 99A) In addition to this risk, Dr. Cignetti noted that there are other risks including, a 15% rejection rate, and a tiny risk of infection or hemorrhage at the time of surgery resulting in complete loss of the eye. (R.R. 100A) Dr. Cignetti summarized his opinion as follows:

> I feel that in her particular case, the overall chance of success being quite conservative is 70% with a 30% chance that her vision would come out the same as it currently is or worse (worse including total loss of the eye).

(R.R. 129A)

It is well settled that a claimant's specific loss is not permanent where reasonable surgery will restore some or all of its function. *Joyce Western Corporation v. Workmen's Compensation Appeal Board (Fichtorn)*, 518 Pa. 191, 542 A.2d 990 (1988). Furthermore, the Supreme Court in *Joyce Western* noted that:

> The issue of what constitutes 'reasonable' surgery in a particular case will, of course, constitute a factual inquiry which will be conducted by a referee. If the evidence establishes that the recommended surgery involves *minimal risk* to the patient and offers a *high probability* of success, the proposed surgery is reasonable.... *Id.*, 518 Pa. at 202, 542 A.2d at 996. (emphasis in original.)

■ A review of the record in this case clearly reveals that the referee's finding that transplantation surgery is not reasonable is supported by substantial evidence.[5] Therefore, this finding will not be disturbed. Accordingly, we conclude that the Claimant's specific loss of her left eye was permanent, and we will affirm the order of the Board.

## ORDER

AND NOW, this 18th day of August, 1993, the order of the Workmen's Compensation Appeal Board dated January 26, 1993, is affirmed.

---

5. Substantial evidence exists when there is relevant evidence in the record which a reasonable person might accept as supporting the conclusion. *Gallo v. Workmen's Compensation Appeal Board (United Parcel Service)*, 95 Pa.Commonwealth Ct. 158, 504 A.2d 985 (1986).