**Troy DAVIS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ACME MARKETS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 27, 1998.

Decided May 15, 1998.

Alfred M. Abel, Philadelphia, for petitioner.

Richard N. Held, Philadelphia, for respondent.

Before COLINS, President Judge, SMITH, J., and LORD, Senior Judge.

LORD, Senior Judge.

Troy Davis petitions this Court for review of a Workers' Compensation Appeal Board (Board) order, which affirmed a Workers' Compensation Judge's (WCJ) decision granting Employer Acme Markets, Inc.'s suspension petition pursuant to the relevant provisions of the Workers' Compensation Act (Act).[1] The WCJ, affirmed by the Board, decided Davis' benefits must be forfeited as of December 17, 1991 due to his refusal to undergo reasonable medical treatment.

Davis was 29 years old when he sustained a work-related lumbosacral strain while unloading frozen foods from a trailer on August 27, 1991. Employer issued a notice of compensation payable and then a supplemental agreement for two very short periods when Davis returned to work in September of 1991. Davis has not worked since September 30, 1991. Earlier, on September 3, 1991, Davis first treated with Dr. Jonathan J. Rogers, a board-certified orthopedic surgeon.

Davis treated with Dr. Rogers twelve times beginning September 3, 1991 and ending July 9, 1992. Dr. Rogers prescribed a conservative course of treatment, including medications, heat treatments, physical therapy and time off work. Dr. Rogers also directed Davis to undergo an EMG and MRI on October 7, 1991, revealing a small to moderate disc herniation at L5–S1. After undertaking more conservative treatment, Dr. Rogers recommended surgery to Davis on November 19, 1991. He then asked Davis to think about surgery and to return in one month. Although Davis never underwent the recommended surgery, he continued to treat with Dr. Rogers, and he pursued biofeedback treatments with a psychologist whom Dr. Rogers had recommended. Davis, after moving to North Carolina, saw Dr. William Richardson, also a board-certified orthopedic surgeon, who treated him five times until October 4, 1993.

Employer filed both suspension and termination petitions in this matter on July 1, 1992. At the hearing, Dr. Rogers testified on behalf of Employer, and Dr. Richardson testified on behalf of Davis. The WCJ found Dr. Rogers' testimony significantly more persuasive as to the reasonableness of the recommended surgery. Although the WCJ denied Employer's termination petition, he granted its suspension petition, concluding that Employer met its burden of establishing that Davis "refused to undergo reasonable medical treatment, namely, surgery for removal of his herniated disc." (Conclusion of Law No. 1, WCJ's Decision, Mailed September 23, 1997, p. 5). After the Board affirmed the WCJ's decision, Davis filed a petition for review with this Court.

Davis now asks the following questions. 1) Whether the WCJ can suspend his benefits for refusing surgery that does not offer any long-term advantage, and for opting instead for conservative treatment; 2) whether the WCJ applied the proper legal standard, in that surgery must have minimal risk and a high probability of success, and the proposed surgery offered no long-term advantage over conservative treatment; 3) whether the WCJ

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

can suspend benefits based on testimony that the proposed surgery had a high likelihood of success if performed within three months of the injury, and the accepted expert testified that the surgery was offered four months after the injury; and 4) whether the WCJ can suspend his benefits for refusing reasonable medical services where he chose one of the reasonable modes of treatment offered by the accepted medical expert.[2]

First, Davis argues that this matter is controlled by our decision in *Textron, Inc. v. Workmen's Compensation Appeal Board (DeCapria)*, 149 Pa.Cmwlth. 516, 613 A.2d 626 (1992). This is because, Davis asserts, the expert opinions adopted both here and in *Textron* show that surgery would provide no long-term benefit over conservative care, and we held in *Textron* that, in such a case, a claimant's refusal to undergo surgery is not a refusal of reasonable medical treatment justifying a forfeiture of benefits.[3]

In *Textron*, this Court upheld a Board order affirming a referee's[4] decision denying the employer's modification petition on the basis that the claimant had not refused reasonable medical services. There, as in this case, the claimant had a herniated disc. The claimant's medical expert, whose testimony the referee accepted, opined that the claimant's disability would not be cured by surgery, and, although there could be initial relief of the claimant's pain, in the end it would return, as if he had never had the surgery. As we explained:

> The testimony of Dr. DiCuccio, specifically credited by the referee, showed that surgery would not cure the claimant's disability. He offered the opinion that the claimant's condition would be the same whether the claimant had the surgery or continued with the conservative treatment. Even reading Dr. DiCuccio's testimony in the light most favorable to the employer, we do not believe a fifty percent chance of long term benefit renders surgery reasonable. While it is true that Dr. DiCuccio opined that the surgery was reasonable, we must read that testimony in the context of which it was offered. His testimony was that either alternative was reasonable in that both would lead to the same end result. In terms of an analysis of Section 306(f) of the Act, surgery offering no significant improvement is not reasonable in the context of determining whether the refusal of that surgery requires a forfeiture of benefits.

*Id.*, 613 A.2d at 629. (Footnote omitted).

Here, however, Dr. Rogers, whose opinion the WCJ found more persuasive than Employer's medical expert's opinion, did not testify that Davis' physical condition would deteriorate over time, thereby rendering the surgery eventually meaningless. Instead, Dr. Rogers testified to a much higher likelihood of recovery for Davis than did the credited medical expert for the claimant in *Textron*. Furthermore, he opined that surgery would hasten Davis' eventual full or partial recovery by many years.

Dr. Rogers testified in relevant part:

Q. Regarding the chances for success of the operation, was that discussed with claimant?

A. Yes, on several occasions.

Q. What was he told?

A. Well, I told him, again to expect an operation that was risk free and flawless and would always make the patient well

---

**2.** Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were unsupported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

**3.** *Textron* concerned Section 306(f) of the Act, 77 P.S. § 531(4), which provided that an employee refusing reasonable medical services forfeits all rights to compensation for any injury or any increase in incapacity resulting from the refusal. This section of the Act was later amended and renumbered as Section 306(f.1)(8), 77 P.S. § 531(8), by the Act of July 2, 1993, commonly referred to as "Act 44" and effective in sixty days. Employer filed its suspension petition before the 1993 amendment and contends that "this matter is governed by the former section 306(f)(4)." (Employer's brief, p. 1). Davis does not dispute this statement, and, in any event, any change in this subsection is immaterial to this matter.

**4.** Since the 1993 amendments to the Act, referees have been known as WCJs.

was unrealistic. *I said there was probably at least a 90 percent chance of him being cured of his problem.* And that there were risks involved and I mentioned the big ones to him but they were very, very unlikely to happen.

(Notes of Testimony, N.T., Testimony of Jonathan J. Rogers, M.D., March 3, 1993, p. 16). (Emphasis added).

Dr. Rogers also testified:

Q. Doctor, I'm referring now to a letter written by you dated 3–2–92 to Maureen Jereb at Kemper National Insurance Companies.

Q. [sic] Your letter it's a brief letter. Can you tell me basically what you told Ms. Jereb in this letter, just briefly?

A. Yes. *I told her that I believed Mr. Davis had a 90 percent chance or better of full or near full recovery from his disc herniation if he underwent the proposed surgery. If he had not had the surgery I felt that he may ultimately do okay but that could take many years, six, seven, eight years until he would feel the same affects* [sic] *that he would feel almost immediately after having the surgery.* I recommended that he have his back operated on so he could recover quickly and get back to work and get back to the productive normal life. I said here that he didn't want the surgery. He didn't feel up to it at the time. My concern was that if he waited all that long, all those years to have some improvement and not work all of those years, he would lose a great deal of his productive life and would fall into a pattern of not working.

(N.T., Testimony of Jonathan J. Rogers, M.D., 3/3/93, pp. 18–19). (Emphasis added).

Because the credited medical testimony establishes that the surgery Dr. Rogers recommended would have afforded Davis almost immediate and significant improvement, but he instead chose to continue for years with more conservative treatment that did not alleviate his condition, this matter does not require the same outcome as *Textron*. This is true even where Dr. Rogers acknowledged that the conservative treatment Davis pursued was reasonable in light of his refusal to have surgery, since Dr. Rogers never re-

treated from his opinion that surgery was the preferred course of action.

Q. Doctor, did claimant's presentations or complaints change at all from 12–17–91 through the last time that you saw him?

A. Not really. He was always about the same. Same complaints, same pain, same distribution of his symptoms.

Q. Did your recommendations change at all over that course of time?

A. No. *Each time I stated that I felt that because he was no better and was clearly miserable he ought to have the surgery.* He made other suggestions about acupuncture and things like that. But I really felt that that was not appropriate to his condition. He was already doing some biofeedback just as a way of handling the pain. *But my recommendation remained that he ought to have his disc removed.*

(N.T., Testimony of Jonathan J. Rogers, M.D., 3/3/93, pp. 15–16). (Emphasis added).

Moreover, contrary to Davis' assertion, the WCJ did not apply an incorrect legal standard in determining whether Davis refused reasonable medical treatment. Although we agree with Davis that it is not the reasonableness of his refusal that matters, and, in Finding of Fact No. 24, the WCJ determined that Davis' reluctance to undergo surgery "does not outweigh the substantial medical evidence" supporting the reasonableness of the surgery, this finding is merely a makeweight. The WCJ clearly applied the correct *legal* standard when he found in "Finding of Fact" No. 23:

The Court has carefully compared the medical evidence adduced in this case and is significantly more persuaded by Dr. Rogers' opinion that the recommended disc surgery would be a reasonable course of treatment for Claimant than by Dr. Richardson's opinion that such surgery would be inappropriate for Claimant essentially because he is a compensation patient. The Court notes that Dr. Rogers first suggested Claimant undergo surgery less than three months after Claimant's injury, and the Court recalls that Dr. Richardson testified that if surgery takes place within

three months of a herniated disc injury, the chances of success were 90 percent. (Id. at 21). *Thus the Court can only conclude from the medical evidence that the surgery recommended by Dr. Rogers carried with it a high probability of success and that the risks were minimal.* Cf. *Muse v. [Workmen's Compensation Appeal Board (Western Electric Co.),* 514 Pa. 1, 522 A.2d 533 (1987)]; *Joyce Western [Corp. v. Workmen's Compensation Appeal Board (Fichtorn),* 518 Pa. 191, 542 A.2d 990 (1988)]; *Donton v. [Workmen's Compensation Appeal Board (Prestolite Battery),* 125 Pa.Cmwlth. 324, 557 A.2d 450 (1989)].

("Finding of Fact" No. 23, WCJ's Decision, Mailed 9/23/97, p. 5). (Emphasis added). Although Davis does not think so, Dr. Rogers' testimony obviously provides substantial medical evidence for the legal conclusion that was incorporated in the above "factual finding."

Last, a suspension is not erroneous in this case simply because the WCJ found that Dr. Rogers first suggested Davis undergo surgery less than three months after his injury, and Dr. Richardson testified that if surgery takes place within that time period the chances of success are 90 percent, where Davis may not have had an opportunity for surgery until four months after the injury, *but Dr. Rogers never testified that Davis' chances for recovery lessened after three months.*

Because it is clear from the preferred medical evidence that, in refusing surgery, Davis refused treatment that would have returned him to work much more rapidly than the conservative treatment he was willing to undergo, refusal of that surgery requires a forfeiture of his benefits under the Act.

The Board's order is affirmed.[5]

### ORDER

AND NOW, this 15th day of May, 1998, the Order of the Workers' Compensation Ap-

peal Board, No. A95–3288, dated September 23, 1997, is hereby affirmed.

---

5. Although we have denied Davis' appeal on the merits, we disagree with Employer that his appeal was frivolous and vexatious and merely challenged the WCJ's credibility determinations.

Accordingly, we deny Employer's request for counsel fees and costs made pursuant to Pa. Rule of Appellate Procedure 2744.