522 A.2d 533

**Lester R. MUSE, Appellee,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD**

**and**

**Western Electric Company, Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 12, 1986.

Decided March 11, 1987.

2

Earl T. Britt, Philadelphia, for appellants.

C. George Milner, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

On February 16, 1973, Lester R. Muse (hereinafter "claimant") suffered a bilateral hernia which was classified as a work-related injury. Surgery was performed on June 23, 1973, to correct the impairment and a final receipt was executed on November 21, 1973, with regard to the claimant's workmen's compensation benefits. Benefits were thereafter reinstated in 1977 when it was discovered that the surgery had caused the atrophy of the claimant's right

testicle together with the contraction of the right spermatic cord. The referee found that the cause of this condition was a result of the first surgery. A second operation was recommended by the employer's physician, which the claimant refused.

The employer subsequently filed a petition for modification based upon § 306(f) of the Pennsylvania Workmen's Compensation Act (hereinafter "Act").[1] The basis of the employer's petition was that the claimant's refusal of the proffered medical services constituted a forfeiture of all benefits under the Act. A hearing was held before a referee on June 22, 1978. At the hearing the only witness was the employer's physician. The petition for modification was eventually dismissed, the referee having determined that the claimant's refusal to undergo surgery was not unreasonable "considering the nature and extent of the operative procedure as well as the possible complications." Finding of Fact No. 13, Referee's Decision, July 14, 1982, p. 3.

On review the Board reversed the referee's decision, finding that the medical services offered were reasonable. As a consequence the referee was directed to enter an order effecting the forfeiture of the claimant's benefits.[2]

On appeal the Commonwealth Court reversed. The court stated that the Board erred in finding the referee's determination of reasonableness was a question of law. It held that "[i]n reviewing the referee's decision, [the Board] needed only to determine whether or not the finding that the claimant's refusal to undergo a second operation was not unreasonable was based on substantial evidence." The court further concluded that "even if the claimant's refusal had been unreasonable, the employer would still have had the burden of proving that the refusal led to further injury or to an increase in the claimant's incapacity." *Muse v.*

1. Act of December 5, 1974, P.L. 782, No. 263, effective in 60 days, as amended.

2. The referee thereupon determined that claimant was to forfeit all benefits which accrued after three months from the date the medical services were offered.

*Workmen's Compensation Appeal Board,* 89 Pa.Cmwlth. 171, 492 A.2d 102 (1985). From that decision the employer sought allowance of appeal, which was granted. We now reverse.

The employer presents a single issue for review: whether the claimant's refusal to undergo the surgery recommended by the employer's physician constituted a refusal of reasonable medical services pursuant to § 306(f) of the Workmen's Compensation Act. Section 306(f) of the Act reads in relevant part:

(4) In addition to the above service, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses. The cost for such hospital treatment, service and supplies shall not in any case exceed the prevailing charge in the hospital for like services to other individuals. *If the employe shall refuse reasonable services of duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal.* Whenever an employe shall have suffered the loss of a limb, part of a limb, or an eye, the employer shall also provide payment for an artificial limb or eye or other prostheses of a type and kind recommended by the doctor attending such employe in connection with such injury and any replacements for an artificial limb or eye which the employe may require at any time thereafter, together with such continued medical care as may be prescribed by the doctor attending such employe in connection with such injury as well as such training as may be required in the proper use of such prostheses. The provisions of this section shall apply in injuries whether or not loss of earning power occurs. If hospital confinement is required, the employe shall be entitled to semi-private accommodations but if no such facilities are available, regardless of the patient's condition, the employer, not the

patient, shall be liable for the additional costs for the facilities in a private room.

§ 306(f)(4), 77 Pa.S. § 531(4) (Emphasis added).

In the instant matter the issue before the Board was whether the facts as established before the referee supported the conclusion that the services offered were unreasonable. The sole evidence offered at the referee's hearing consisted of the testimony of the employer's physician concerning the feasibility of surgery to correct the claimant's condition. His testimony as summarized by the Board was as follows:

He performed a physical examination on claimant. He found claimant's complaints were produced by a too tight repair (surgery) around the internal inquinal ring, resulting in a compromising of the venous and arterial blood supply, and hence, that claimant's present problem is related to his prior surgery necessitated by his asserted injury and not directly to the injury. He recommended treatment for claimant which would be surgery that would eventually repair the tightness. Hospitalization would be from five to seven days. He stated that with any type of surgery there is always the various risks that are associated with any surgery but are minimal in nature "as long as general health is fairly good, that there is no complicating or contradicting medical conditions." His examination of claimant caused him to conclude that claimant was a candidate for surgery that he recommended. Normal post-operative convalescence would be two to three months. If the surgery was successful, claimant would be relatively asymptomatic with regard to the right groin area. Claimant would have no limitation in his ability to lift objects or perform any kind of work. He stated the surgery should be completely successful under the proper technique and under the proper conditions. He stated that the risk factors of the problem, phlebitis, pulmonary emboli, wound infection, are on a percentage basis, that there would be a one to five percent chance of complications. On cross-examination

he mentioned the possible consequences of any surgery. Counsel had the physician estimate the incision in the body which the recommended surgery would entail. The physician noted claimant was a heavy smoker, and that non-smokers are better surgical candidates. He then went on in rather considerable detail as to what organs of the body would be touched in the recommended surgery. He stated that complications, other than phlebitis, pulmonary emboli, or wound infection would include the whole gamut following any surgical procedure, a myocardial infarction, drug reaction, skin reaction, allergic dermatitis, just to name a few.

*Muse v. Western Electric Company*, W.C.A.B. No. A–77461, p. 2–3. For whatever reason the claimant presented no evidence.

The referee, relying solely on the possible complications inherent in *any* surgical procedure, found as a matter of law that the employer failed to show that the claimant refused reasonable surgical services.

■ On review the Board found as a matter of law that the referee applied the improper analysis to the case, in that he focused on whether the claimant's refusal was reasonable, as opposed to whether the services offered were reasonable. The Board went on to say that the mere element of risk intrinsic in any surgical procedures was not sufficient to permit a conclusion that the surgery was unreasonable. Something more was required. Otherwise all surgical procedures would be presumptively unreasonable, a conclusion that would effectively vitiate the statute. The Board concluded therefore that in this case, where the only evidence was that the surgery involved minimal risk and offered a high probability of success, the surgery was, as a matter of law, reasonable under section 306(f).

We think the Board's decision was correct. The record developed before the referee consisted solely of uncontested evidence supporting a conclusion that the surgery was reasonable. Had the claimant offered countervailing evidence that the surgery was unreasonable, or that he wasn't

a good candidate for this surgery given his condition, the referee may have had a basis upon which to deny the employer's petition. However, on the record, the referee's conclusion was unsupported by the evidence. *See Katz v. Evening Bulletin,* 485 Pa. 536, 540, 403 A.2d 518, 520 (1979).

■ Therefore, we conclude that the order of the Commonwealth Court reversing the Board's determination on the reasonableness of the surgery was in error. The basis of this error was the fact that the court did not analyze the question in accordance with the terms of the statute. As noted above the statute provides in relevant part:

> If the employe shall refuse reasonable services of duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal.

77 Pa.S. § 531(4). The focus of the statute is on the reasonableness of the services offered. However, the Commonwealth Court interpreted the statute as if it focused on the reasonableness of the claimant's refusal. While the latter can certainly be a factor in determining whether the services offered were reasonable, it is not something that can be presumed on a barren record.

Thus the statute requires an employer to place evidence on the record that proposed medical services are reasonable. That was done in this case. Thereafter, the claimant can rest his case, hoping that the employer will have failed to carry his burden, or introduce evidence as to why, in his individual case, the services offered were not reasonable. Unfortunately for the claimant in this case, once the employer established the reasonableness of the surgical procedure, the record was barren of any evidence to support a finding of unreasonableness.

The Commonwealth Court added in their final paragraph an alternative basis for reversing the Board. In so doing

they added a dimension and burden of proof nowhere provided in the statute. It said:

> "We would also note that, even if the claimant's refusal had been unreasonable, the employer would still have had the burden of proving that the refusal led to *further* injury or to an increase in the claimant's incapacity ... (emphasis added).

*Muse v. Workmen's Compensation Board,* 89 Cmwlth.Ct. 171, 175, 492 A.2d 102, 104 (1985). The words of the statute could not be clearer, or its obvious purpose better served than by the words used. They are simple and direct. If one refuses reasonable medical service, they "shall forfeit all rights to compensation *for any injury* or any increase in his incapacity shown to have resulted from such refusal." 77 Pa.S. § 531(4).

The purpose of the statute is to provide cure where it can reasonably be done by medical arts for the benefit of the claimant; that he not be handicapped in his health or his prospects for gainful and fulfilling employment. The claimant here was unlucky in both his injury and the unsuccessful cure. He cannot be expected to be happy that what was done must be done again. Who can be cured and won't soon drys sympathy and wearies the most willing helpers. One ought not in any context avoid reasonable medical procedures to cure infirmities that are a burden to life and the prospects of life. The statute does not command that every possibility of cure be pursued. What it does require is that reasonable means be employed. What is reasonable has meaning in the context of each case. In this case there is no evidence that unreasonable procedures have been prescribed.

Accordingly, the order of the Commonwealth Court is reversed.

LARSEN, J., files a dissenting opinion in which HUTCHINSON and PAPADAKOS, JJ., join.

LARSEN, Justice, dissenting.

I agree with the majority's interpretation and analysis of section 306(f) of the Workmen's Compensation Act, 77 P.S.

§ 531(4), that the focus of the statute is on the reasonableness of the services offered and not on the reasonableness of the employee's refusal to accept the treatment, although the latter might be a factor in determining whether the services offered were reasonable.

However, I do not agree with the majority that the "record developed before the referee consisted solely of uncontested evidence supporting a conclusion that the surgery was reasonable," and that "on the record, the referee's conclusion was unsupported by the evidence." Majority op. at 6–7. It is true that the claimant did not introduce medical evidence as to the reasonableness of the proposed surgical procedure to counter the medical evidence offered by the employer. What the record also contained, though, was that claimant's *uncontroverted actual medical history*, which included the fact that the previous surgical procedure to correct his work-related hernia, performed at the employer's request, was unsuccessful and caused further damage, pain and suffering. Presumably, the risk associated with that first surgery was no more than the risk associated in any surgical procedure (the record does not indicate otherwise), and yet that first surgical procedure failed with serious consequences for the patient.

As the majority states, "what is reasonable [medical services] has meaning in the context of each case." Majority op. at 8. The context of *this case* included the actual failure of the prior surgical procedure performed to correct the claimant's work-related injury. Accordingly, I disagree with the majority's finding that "the record was barren of any evidence to support a finding of unreasonableness" of the surgical procedure. To the contrary, I believe the claimant's actual medical history provided substantial, competent evidence for the referee's determination.

I dissent.

HUTCHINSON and PAPADAKOS, JJ., join in this dissenting opinion.