589 A.2d 778

**Gary E. ROBINSON, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (LINDSEY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 18, 1991.

Decided April 10, 1991.

---

84

Arthur J. Leonard, with him, Robert A. Loch, Robb, Leonard & Mulvihill, Pittsburgh, for petitioner.

John W. McTiernan, Caroselli, Spagnolli & Beachler, Pittsburgh, for respondent.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Gary E. Robinson (Employer) appeals from a decision of the Workmen's Compensation Appeal Board (Board) affirming the decision of the referee that workmen's compensation benefits should not be suspended as a result of Joseph

K. Lindsey's (Claimant) refusal to submit to reasonable medical treatment. We reverse.

Claimant injured his left ankle while working as a garbage man for Employer on October 29, 1984. Claimant applied for workmen's compensation benefits and was awarded total disability at a weekly rate of $217.69.[1]

The Employer filed a petition seeking suspension or modification of benefits on the grounds that Claimant's disability has improved and that he is now able to return to gainful employment within his capabilities. Employer later amended its petition to request alternative relief of termination of compensation on the grounds that Claimant refused reasonable surgery to correct his disability.[2]

To support its position that Claimant refused reasonable medical treatment, the Employer took the deposition of Dr. Haser, the doctor who testified on Claimant's behalf at the initial compensation hearing. Dr. Haser testified that he recommended reconstructive surgery of the ligaments of Claimant's ankle to correct his disability. The Claimant refused to have the surgery.

In support of his position that the surgery was not reasonable, Claimant offered the deposition testimony of Dr. Brasuk, the doctor who had testified on Employer's behalf at the initial compensation hearing. This deposition which was originally offered in support of Employer's case, focused primarily on Dr. Brasuk's opinion that Claimant did not suffer a disability. The referee who heard the evidence on the present petition for suspension, modification or termination also found that the deposition of Dr. Brasuk supported the conclusion that the offered surgery was unreasonable. The referee therefore denied the petition to terminate for refusal of reasonable medical treatment, but

1. Section 306(a) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 511.

2. Employer's alternative relief is pursuant to Section 306(f)(4) of the Act, 77 P.S. § 531(4). The appropriate relief under this section is suspension, rather than termination of benefits. *Crews v. Workmen's Compensation Appeal Board (B & W Tubular Products Group),* 123 Pa.Commonwealth Ct. 610, 554 A.2d 190 (1989).

reduced the amount of benefits payable to $128 per week because the Claimant was now only partially disabled.

The Employer appealed to the Workmen's Compensation Appeal Board which affirmed the decision of the referee. Employer now appeals to this Court on the grounds that the evidence does not support the referee's findings of fact, and that the referee erroneously relied on the deposition of Dr. Brasuk when that deposition had been reviewed by another referee in a prior proceeding and was deemed to be not credible.[3]

Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 227, 572 A.2d 838 (1990).

Employer's argument that the Brasuk deposition was inadmissible to prove the unreasonableness of the offered surgery is essentially a collateral estoppel argument. The collateral estoppel doctrine provides that:

[W]here particular questions of fact essential to the judgment are actually litigated and determined by a final valid judgment, the determination is conclusive between the parties in any subsequent action on a different cause of action.

'Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only as to those matters in issue.'

*Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.)*, 88 Pa.Commonwealth Ct. 76, 488 A.2d 1177 (1985) *petition for allowance of appeal denied*, 515 Pa. 616, 530 A.2d 869 (1987), (*quoting McCarthy v. Township of McCandless*, 7 Pa.Commonwealth Ct. 611, 619, 300

**3.** Referee Marvin A. Luxenberg presided at the initial hearing and found Claimant totally disabled. Referee Nathan T. Cohen presided at the latter hearing from which this appeal evolved.

A.2d 815, 820–21 (1973)). We believe that in this case the doctrine does not apply since there is no identity of issues in the two proceedings. In the first hearing, the referee did not pass upon the reasonableness of the offered medical procedure, whereas in the latter hearing that was the critical issue to the Employer's request for a termination of benefits. Therefore, we are of the opinion that it was not error for the referee to consider the deposition of Dr. Brasuk and his opinion of the reasonableness of the offered medical treatment.

After conducting a close examination of the evidence presented to Referee Cohen, we conclude that the findings of fact are not supported by substantial evidence. Specifically, we do not find evidence to support the conclusion that the surgical reconstruction of the ligament was an unreasonable medical treatment.

If there is sufficient relevant evidence in the record as a whole which a reasonable mind might accept as adequate to support the conclusion, the evidence is substantial, and we must endorse the referee's findings. *Bethenergy Mines.* In making this determination, we will not engage in reweighing the testimony of contradicting witnesses, nor resolving the issue of which witnesses are more credible. Matters of credibility are for the referee, whom we continue to regard as the ultimate fact-finder. *Id.* Nevertheless, when we believe that the referee has misconstrued the evidence, we must find that the evidence does not support his findings.

The referee found that Dr. Haser's testimony on cross-examination demonstrated that the offered treatment was not reasonable "in view of the risks noted by the physician and the post surgical immobilization and need for extensive post surgical physical therapy also noted by the physician." This finding unfairly characterizes the doctor's testimony and is not supported by substantial evidence.

Dr. Haser repeatedly testified that the operation had a ninety percent success rate. With regard to the hazards, he testified thus:

A. The basic risk that I talk about in any operation is, number one, infection because there's always a small risk of infection. If you operate upon a joint, if it gets infected, it's a serious problem because it could cause permanent damage to the joint. I know I explained that to him.

I also explained to him if by chance he did get an infection, we would have to go back in and open the joint and irrigate it out and possibly have it heal from the inside out. That could take longer to heal and could lead to stiffness in his ankle.

Other potential complications are the operation may not work. For some reason if the tendon that we use to make a knew (sic) ligament didn't heal properly or pulled apart in the cast, which is very unlikely, he would be left with instability in his ankle like he has now. There's a slim chance that it wouldn't help.

Other possibilities are there are some superficial nerves in the lateral part of the foot where we make the incision. There is a possibility that those superficial nerves could either be cut or trapped and scarred, leading to some numbness in his foot, which is not a great disability but an aggravation. That is a possibility.

Those are the major potential complications with this operation. Of course, other operations, you have to consider you have to be put to sleep to have this operation, so there is a risk of anesthesia.

In a relatively young person that's healthy, the risks are minimal to having complications such as a cardiac arrest or something as grave as that.

But these are other risks that have to be considered. These are the standard things I would tell him for an operation such as this.

(Haser Deposition, N.T. at 22–24.) Of these risks, infection and the dangers relating to general anesthesia are ancillary to almost all surgery. The doctor noted that he advised patients regarding these risks in any operation. In *Donton v. Workmen's Compensation Appeal Board (Prestolite*

*Battery)*, 125 Pa.Commonwealth Ct. 324, 557 A.2d 450 (1989), we held that a surgical procedure with risks "only slightly greater than the risks inherent in any type of surgical procedure" was still reasonable. *Id.*, 125 Pa.Commonwealth Ct. at 327, 557 A.2d at 451. Consequently these risks will not support a conclusion that the offered surgery was unreasonable. *Muse v. Workmen's Compensation Appeal Board*, 514 Pa. 1, 522 A.2d 533 (1987).

Dr. Haser also noted that there was a risk that the operation would not be successful. This risk he described as "very unlikely" and a "slim chance" (Haser Deposition, N.T. at 23). The doctor also stated on more than one occasion that the success rate of the surgery was more than ninety percent. In *Donton*, we found that an operation with a success rate of 85 percent was reasonable medical treatment. Evidence of a failure rate of less than 10 percent cannot be said to be unreasonable if we were willing to accept a failure rate of 15 percent in *Donton.*

The referee's characterization of Haser's testimony regarding the post-surgical physical therapy as "extensive" is also without support in the record. Haser testified that the therapy required to rehabilitate a teenager or a 20–year old would be six weeks, but because Claimant was in his thirties, he could require therapy "from six weeks to two months, maybe three months." (Haser Deposition, N.T. at 30.) We do not believe that this testimony can be fairly said to support the referee's conclusion of "extensive" rehabilitation which would render the offered surgery unreasonable. Compared to a life of disability, even three months of physical therapy seems to us to be quite reasonable. In *Crews* we held that medical treatment which included four to six weeks of therapy was reasonable, and that a claimant who refused it was not entitled to benefits. Similarly, in *Donton* we held that surgical treatment which allowed most patients to return to work within four months was also reasonable. Dr. Haser's testimony therefore does not support a conclusion that the offered treatment was unreasonable.

The referee also relied on the deposition of Dr. Brasuk to support his conclusion that the offered treatment was not reasonable. Most of Dr. Brasuk's testimony was based on his examination of the Claimant, and concerned his opinion that Claimant was not disabled and did not have ligamentous instability. He was asked, however, if he would recommend the surgery discussed by Dr. Haser assuming a person did have ligamentous instability. His testimony in its entirety was as follows:

Q. You've got me confused, Doctor. If someone has ligamentous instability, do you do a peroneal reconstruction?

A. That's what has been recommended for him. If he had ligamentous instability of his ankle, you're using the tendon of the peroneus muscle to reconstruct this weakness, and you're robbing Peter to pay Paul. In other words—am I clear there?

Q. Somewhat. The surgery is done to—

A. Reconstruct the ligaments torn, but you use the peroneal, and I just didn't recommend the surgery.

Q. Where you have a ligamentous instability, would you agree that this is the type of surgery that would be indicated?

A. No. If you have it. I mean, there are people that do it. Let me just say that I have done a couple, and I haven't been happy with the results, because they stretch out, and I just haven't been happy with it, but maybe those other people are better than I am.

(Brasuk Deposition, N.T. at 22–23.)

We do not believe that this passage substantiates the conclusion that Dr. Brasuk believes that the surgery is unreasonable. He states that he has not had success with the surgery but that other doctors do perform the surgery, and he acknowledges that they may be better surgeons than he. This testimony is equivocal, and equivocal testimony will not support a finding of fact. *Lewis v. Workmen's Compensation Appeal Board,* 508 Pa. 360, 498 A.2d 800

(1985). A determination whether medical testimony is equivocal is a conclusion of law and is fully reviewable. *Id.*

Because the evidence does not support the conclusion that the surgical reconstruction of the ligaments in Claimant's ankle was unreasonable, that finding is not supported by the evidence. Therefore, benefits should properly be suspended because of Claimant's refusal to undergo the surgery.

Accordingly we reverse.

## ORDER

AND NOW, this 10th day of April, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed.

McGINLEY, Judge, dissenting.

I respectfully dissent.

The majority concludes that in Finding of Fact No. 10, the referee unfairly characterizes Dr. Haser's testimony with regard to the risks of Claimant's reconstructive surgery and thus makes a finding not supported by substantial evidence. I disagree. Dr. Haser clearly testified that the operation may not work and could possibly result in damage to certain nerves and numbness to the foot. (Haser Deposition, N.T. at 23.) Dr. Haser also testified as to risks of infection and potential complications from being placed under anesthesia. (Haser Deposition, N.T. at 22–24.) I would hold that this testimony provided substantial evidence for Finding of Fact No. 10 which supports the referee's conclusion that Claimant's refusal of the recommended surgery was not unreasonable in view of the risks noted by Dr. Haser. Accordingly, I would affirm.