Robert KNEAS, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CROSS COUNTRY CLOTHES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 1996.

Decided Nov. 18, 1996.

240, 410 A.2d 1301 (1980), we explained that section 413 has no applicability to final receipts.

Charles C. Hansford, Palmerton, for Petitioner.

David A. Pennington, Allentown, for Respondent.

Before FRIEDMAN and KELLEY, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Robert Kneas (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (WCAB) affirming the decision of a Workers' Compensation Judge (WCJ) to grant the suspension petition of Cross Country Clothes (Employer) based on Claimant's refusal to undergo surgery for his work-related injury.[1]

On January 31, 1994, Employer petitioned for the suspension of Claimant's benefits, alleging that Claimant had refused reasonable medical treatment in the form of surgery for his work-related injury. Claimant filed an answer denying the material allegations of the petition, and hearings were held before a WCJ.

At the hearings, Employer presented the deposition testimony of Walter J. Finnegan, M.D. Based on his examination of Claimant and his review of various medical records and reports, Dr. Finnegan opined that, as a result of his work injury, Claimant suffered from lumbar spinal stenosis with particular involvement of the L5 nerve roots as well as the L4 and S1 nerve roots on the right side. Dr. Finnegan testified that surgery was a reasonable approach to alleviate Claimant's problems and recommended a decompressive laminectomy. Dr. Finnegan stated that he had performed this type of surgery throughout his professional life and that such surgery would provide an eighty percent chance of a good to excellent result, as measured by

subjective relief of pain and improvement in function, a ten percent chance of a fair result, meaning slight or modest pain relief, and "a ten per cent [sic] chance of no change[, including] a one or two per cent [sic] chance" that Claimant's condition would worsen. (WCJ's Finding of Fact, No. 2.) However, Dr. Finnegan also stated that, considering Claimant's age, overall circumstances and back history, Claimant's chances of obtaining further employment after back surgery "would be fairly 'dim.'" (WCJ's Finding of Fact, No. 4.) Dr. Finnegan did not directly relate his recommendation of surgery to Claimant. (WCJ's Findings of Fact, Nos. 3–4.)

Claimant testified on his own behalf concerning alleged statements by physicians who had examined or treated Claimant over the years since his work injury. Claimant claimed that he had not actually refused the recommended surgery. Claimant offered no competent medical evidence to contradict Dr. Finnegan's testimony that surgery would be reasonable medical treatment. (WCJ's Findings of Fact, Nos. 5–7.)

Upon consideration of the evidence, the WCJ accepted the unchallenged testimony of Dr. Finnegan that a decompressive laminectomy was reasonable medical treatment for Claimant. The WCJ rejected Claimant's testimony about the statements of other physicians who examined or treated Claimant since his work injury. (WCJ's Finding of Fact, No. 5.) The WCJ also rejected Claimant's testimony that he never actually refused the particular surgery. Although the WCJ accepted that Dr. Finnegan never told Claimant that he recommended back surgery, the WCJ found that Claimant refused to undergo the surgery as of August 24, 1994, the date of Claimant's testimony before the WCJ. The WCJ reasoned that, by that time, Claimant had received Employer's suspension petition and had an opportunity at Dr. Finnegan's deposition to address whether the surgery constitutes reasonable medical treatment. (WCJ's Finding of Fact, No. 7; WCJ's op. at 2; R.R. at 16a.) Based on

1. The WCJ also ordered that Claimant is entitled to a reinstatement of compensation upon undergoing the surgery or upon demonstration of circumstances which would render the surgery unreasonable; however, this portion of the order is not at issue here.

these determinations, the WCJ ordered the suspension of Claimant's compensation. Claimant appealed to the WCAB, which affirmed the WCJ's decision.

▪ On appeal to this court,[2] Claimant argues that the record does not contain substantial evidence to support a finding that Claimant refused reasonable medical treatment. We believe that the record contains substantial evidence to support the WCJ's finding that Claimant refused to have the surgery. However, we do not believe that the record contains substantial evidence to support a finding that the surgery is reasonable here.

Section 306(f.1)(8) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(8), provides as follows:

> (8) If the employe shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal.

Our supreme court has stated that the purpose of this provision is to provide a cure, where it can reasonably be done by the medical arts, so that the claimant "not be handicapped in his health or his prospects for gainful and fulfilling employment."[3] *Muse v. Workmen's Compensation Appeal Board,* 514 Pa. 1, 8, 522 A.2d 533, 537 (1987). What is reasonable only has meaning in the context

of a particular case; however, surgery is reasonable as a matter of law where the surgery involves minimal risk and a *high probability of success. Id.*

▪ In other words, to determine whether recommended medical treatment is reasonable here, we consider: (1) whether it is highly probable that the medical treatment will cure the claimant's health problem; and (2) whether it is highly probable that the medical treatment will enhance the claimant's prospects for gainful and fulfilling employment.

First, the WCJ found, based on Dr. Finnegan's testimony, that the recommended surgery would provide an eighty percent chance of a good to excellent result, a ten percent chance of a fair result and a ten percent chance of no change or a worsening of Claimant's condition. (WCJ's Finding of Fact, No. 2.) However, Dr. Finnegan testified that those percentages would apply *if the surgery had been done in 1990.*[4] (R.R. at 40a–41a.) According to Dr. Finnegan, "the percentage of good and excellent results diminishes over a period of time." (R.R. at 41a.) However, Dr. Finnegan failed to indicate the chance of the surgery achieving a good to excellent result as of June 8, 1994, the date of his deposition. Thus, we do not have before us any relevant medical testimony about the probability in 1994 of curing Claimant's back problem with surgery.[5]

---

2. Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law have been committed or whether necessary findings of fact are supported by substantial evidence in the record. *Brown v. Workmen's Compensation Appeal Board (Village Thrift Stores),* 162 Pa.Cmwlth. 1, 638 A.2d 1037 (1993). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Kraushaar v. Workmen's Compensation Appeal Board (Doors, Inc.),* 142 Pa.Cmwlth. 69, 596 A.2d 1233 (1991), *appeal denied,* 534 Pa. 643, 626 A.2d 1160 (1992).

3. Concerning the reference to a claimant's "prospects for gainful and fulfilling employment," we note that, for workers' compensation purposes, the term "disability" is equated with a loss of earning power. *Somerset Welding & Steel v. Workmen's Compensation Appeal Board (Lee),* 168

Pa.Cmwlth. 78, 650 A.2d 114 (1994), *appeal denied,* 540 Pa. 652, 659 A.2d 990 (1995).

4. Employer alleged in his petition that benefits should be suspended in 1990. (R.R. at 1a.)

5. Moreover, Dr. Finnegan stated that the percentages which he gave do not take into account Claimant's age, Claimant's medical conditions, the duration of his complaints and the extended amount of time without surgical intervention. (R.R. at 48a.) Indeed, with respect to Claimant's medical conditions, Dr. Finnegan stated that he would *not* perform the surgery unless: (1) tests showed that the skin lesion on Claimant's back was not malignant; (2) a cardiologist approved the surgery in light of Claimant's blood pressure problem; and (3) a pulmonary expert approved the surgery in light of Claimant's emphysema. (R.R. at 44a–47a.)

With respect to Claimant's prospects for gainful and fulfilling employment after surgery, Dr. Finnegan testified that: (1) surgery would not have a significant effect on Claimant's work capacity at this late date, (R.R. at 48a); (2) after surgery, Claimant still would have "a low chance of employability," (R.R. at 49a); and (3) after surgery, Claimant's "chances would still then be fairly dim of obtaining further employment," (WCJ's Finding of Fact, No. 4; R.R. at 51a). Thus, the record shows that, even with the surgery, it is not probable at all that Claimant's prospects for gainful and fulfilling employment will be increased.

Because there is *no* relevant medical testimony regarding the probability of success with respect to curing Claimant's back problem and because the record shows that there is a low probability of success with respect to Claimant's post-surgery employability, we reverse.

## ORDER

AND NOW, this 18th day of November, 1996, the order of the Workmen's Compensation Appeal Board, at A94–3543, dated April 2, 1996, is reversed.