**AMERICAN RED CROSS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CURRAN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 30, 1999.

Decided Nov. 16, 1999.

---

Jeffrey D. Newby, Philadelphia, for petitioner.

Joseph J. O'Neill, Philadelphia, for respondent.

Before SMITH, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

SMITH, Judge.

American Red Cross (Petitioner) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed in part the decision of a Workers' Compensation Judge (WCJ) to deny Petitioner's requests to terminate, suspend, modify or forfeit benefits paid to Respondent Colleen Curran. Petitioner states the question involved as whether the Board erred in affirming the decision of the WCJ, who concluded that Curran properly refused medical services that Pe-

titioner characterizes as being reasonable. Curran's refusal of certain medical services emanated from her decision to breast-feed her newborn child.

I

Curran sustained an injury on July 29, 1994 in the course of her employment as a phlebotomist with Petitioner when she picked up a phoresis kit and felt a stabbing pain in her lower back and cramping in her abdomen; she was five months pregnant at the time. Petitioner issued a notice of compensation payable that described the injury as lumbo-sacral sprain and strain and sciatica. On September 18, 1995, Petitioner filed a petition to terminate, modify or suspend Curran's benefits. The petition alleged that Curran had refused, based upon her personal decision to breast-feed her nine-month-old child, to receive epidural steroid injections, to take any prescription medications or to submit to lumbar microdisectomy surgery, which assertedly were reasonable and necessary medical treatments to improve her condition and to return her to the workforce. Petitioner later indicated on the record its intent to seek forfeiture of benefits for refusal of reasonable medical services.

In support of its petition Petitioner offered the deposition testimony of M. Richard Katz, M.D., who is board-certified in neurosurgery. Based upon his examination of Curran on May 9, 1995 and his review of medical records including the results of X-rays, a CAT scan and an MRI, Dr. Katz testified that Curran had a right-sided lumbar radiculopathy, secondary to a herniated lumbar disc. He stated that she was not taking any medications for fear that they would be transmitted to her nursing child. Dr. Katz opined that micro-lumbar discectomy was a reasonable medical procedure for Curran and that it had a good chance of improving her condition. He stated also that Curran might wish to try epidural steroids, but that such treatment or administration of anti-inflammatory medication would treat only the symp-

toms of Curran's problem, not the cause, which was likely to persist in view of the length of time that had passed since the original injury.

Petitioner also called Curran as a witness. She described her injury and her treatment, beginning with her family doctor, Dr. Jerry Skobinsky, who directed very conservative measures including elevation of her feet, ice on her back and Tylenol until after her pregnancy. Curran stated that her son was born December 29, 1994; she wished to breast-feed him in part because he suffered from various health problems including pneumonia, and he was hospitalized several times. Curran discussed the possibility of the treatments listed in Petitioner's petition with Dr. Katz when she saw him in May 1995.

On October 17, 1995, Curran first saw David S. Tabby, D.O., on referral from Dr. Skobinsky. He discussed doing gentle physical therapy and starting medications after she weaned her child. Curran saw him again in February and April 1996. The prescribed medication did not substantially help her pain, and she had an initial epidural steroid injection before the April 1996 visit. Dr. Tabby arrived at the same diagnosis as Dr. Katz. He also testified that Curran was conducting her treatment as a normal person would under the circumstances. Dr. Tabby stated that he would not have recommended very involved physical therapy for three months after the birth of a child and that he would not have recommended medication and steroid injections while Curran was breast-feeding because of a potential harm to the infant.

The WCJ expressly credited the testimony of Dr. Tabby. He stated: "Specifically, this judge finds that Dr. Tabby's treatment of Claimant's injury in conjunction with her pregnancy and choice to breast feed her child was reasonable." WCJ decision, Finding of Fact No. 6. The WCJ found the testimony of Dr. Katz to be equivocal regarding the issues of treatment with medications and epidural ster-

oids in May 1995; he found that the use of epidural steroids would not be appropriate for a nursing mother. Further, the WCJ found that Curran was credible, that her treatment of her injury was appropriate due to her situation and that she had begun more active treatment since weaning her child, including the use of epidural steroid injection treatment.

■ The WCJ concluded that Curran had not refused reasonable medical services under her specific circumstances, and he denied termination, suspension, modification or forfeiture of benefits. He found repugnant the idea that Curran should be forced to undergo surgery or to put her child at risk in order to remain eligible for benefits. In addition, the WCJ concluded that Petitioner had presented an unreasonable contest, and he awarded a 20 percent attorney's fee to Curran because Petitioner presented no evidence of reasonableness of the medical services in Curran's situation. On Petitioner's appeal, the Board concluded that Dr. Tabby's testimony as a whole supported the WCJ's determination that Curran had not refused reasonable medical services, and it affirmed on that point. The Board reversed as to the award of attorney's fees, noting that in general a reasonable contest exists where there is a conflict in the medical testimony. *William H. Rorer, Inc. v. Workmen's Compensation Appeal Board (Staffieri)*, 110 Pa.Cmwlth. 642, 532 A.2d 1283 (1987). The Court's review of the Board's order is limited to determining whether there was a constitutional violation or an error of law and whether the necessary findings are supported by substantial evidence in the record. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

## II

Petitioner first argues that the WCJ and the Board erred in finding that Curran's refusal of medical services was justified. Section 306(f.1)(8) of the Workers' Compensation Act, Act of June 2, 1915, P.L 736, *as amended,* 77 P.S. § 531(8), provides: "If the employe shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal." In *Muse v. Workmen's Compensation Appeal Board*, 514 Pa. 1, 522 A.2d 533 (1987), the Supreme Court interpreted nearly identical language in former Section 306(f)(4) of the Act, *formerly* 77 P.S. § 531(4), renumbered by Section 8 of the Act of July 2, 1993, P.L. 190. Petitioner asserts that *Muse* held that the only issue in a case such as this is the reasonableness of the medical services offered, not the reasonableness of the refusal to take advantage of those services. According to Petitioner, it is irrelevant that Curran refused the recommended epidural steroids and anti-inflammatory medications or the surgical procedure because she wanted to breastfeed her son or to avoid surgery.

Petitioner asserts that its burden is to demonstrate that Curran refused reasonable medical services offered to her, that a successful outcome of the offered services has a high probability of reducing or eliminating her disability and that the risks involved are the same as those for any surgical procedure, citing *Litak v. Workmen's Compensation Appeal Board (Comcast Cablevision)*, 155 Pa.Cmwlth. 147, 624 A.2d 773 (1993). In *Litak* this Court quoted from *Joyce Western Corp. v. Workmen's Compensation Appeal Board (Fichtorn)*, 518 Pa. 191, 202, 542 A.2d 990, 996 (1988), which held that proposed surgery is reasonable if it "involves *minimal risk* to the patient and offers a *high probability* of success...." Petitioner argues that the WCJ and the Board erred by making a determination of whether Curran's refusal of treatment was reasonable and that Petitioner met its burden and therefore should not be obligated to continue wage loss

benefits to Curran in light of her personal decision to refuse treatment.

Curran responds that Petitioner does not correctly apply the legal standard set forth in *Muse.* In that case a claimant underwent surgery for a work-related hernia, and he later developed problems that were caused by the surgery. The claimant refused to undergo further surgery without a guarantee that the procedure would be successful; however, he did not introduce any medical evidence that proposed corrective surgery was unreasonable. The court stated that after the employer places evidence on the record that medical services are reasonable, a claimant may "introduce evidence as to why, in his individual case, the services were not reasonable." *Muse,* 514 Pa. at 7, 522 A.2d at 536. Contrary to Petitioner's assertions, the court held that, although the "focus of the statute is on the reasonableness of the services offered," the reasonableness of a claimant's refusal "can certainly be a factor in determining whether the services offered were reasonable, [but] it is not something that can be presumed on a barren record." *Id.* In conclusion the court stated: "What is reasonable has meaning in the context of each case." *Id.,* 514 Pa. at 8, 522 A.2d at 537.

▓▓▓ The Court agrees with Curran that Petitioner misinterprets *Muse.* The reasonableness of a claimant's refusal under his or her particular circumstances is entirely relevant. Unlike the claimant in *Muse,* Curran offered her own testimony of special circumstances regarding her nursing of her small son and the medical evidence of Dr. Tabby, who stated that Curran conducted her treatment as a normal person would under the circumstances. Even Dr. Katz, who recommended surgery, noted that "[t]he epidural is frequently tried because people wish to avoid surgery, quite understandably, and many people do." Deposition of Dr. Katz at p. 43. He stated also that he had no knowledge of what medications would affect breast milk. The WCJ and the Board did not apply an incorrect standard by considering Curran's particular circumstances.

Next Petitioner asserts that the WCJ's findings were not supported by substantial evidence. It notes that substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Leonard S. Fiore, Inc. v. Department of Labor and Industry, Prevailing Wage Appeals Board,* 526 Pa. 282, 585 A.2d 994 (1991). Petitioner states that the WCJ's Findings of Fact Nos. 6, 7 and 8 constitute errors of law. Those findings state, respectively, that Dr. Tabby's treatment was appropriate in light of Curran's decision to breast-feed, that the use of epidural steroids would not be appropriate for a nursing mother and that her treatment was appropriate due to her "situation." Petitioner notes that the WCJ made no reference to the proposed surgical procedure; it also notes points of agreement in the testimony of Dr. Katz and Dr. Tabby and criticizes Dr. Tabby's reservations regarding surgery, stating that Curran testified that she is in constant pain and is currently incapacitated from working. Further, Petitioner asserts that the record and the WCJ's findings support Dr. Katz' opinion that by May 1995 or later, more than nine months after Curran's original injury, treatment such as physical therapy or anti-inflammatory drugs would be of little use. Therefore, Petitioner argues that Curran's approach to her treatment was not reasonable.

▓▓ Curran notes that credibility determinations are solely within the province of the WCJ. *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board,* 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973). A WCJ may accept or reject the testimony of any witness, in whole or in part, and the Court will not disturb the WCJ's findings even if there is evidence to the contrary, if those findings are supported by substantial evidence. *Central Highway Oil Co. v. Workers' Compensation Appeal Board (Mahmod),* 729 A.2d 106 (Pa.Cmwlth.

1999). Curran emphasizes that the WCJ expressly rejected certain portions of Dr. Katz' testimony as being not credible. She also notes that in *Braun Baking Co. v. Workmen's Compensation Appeal Board (Stevens)*, 136 Pa.Cmwlth. 499, 583 A.2d 860 (1990), this Court held pursuant to *Muse* that the claimant properly presented evidence as to why he was not a good candidate for surgery and that the evidence supported the determination that the proposed treatment was not reasonable.

In the present case, Dr. Tabby testified that he would not recommend giving steroid injections or anti-inflammatory drugs to a woman who was breast-feeding because of risks to the infant and that he would not have recommended doing anything differently in Curran's case. When asked in June 1996 whether Curran needed a discectomy, Dr. Tabby stated that he was close to making that decision but that he did not yet have sufficient information, and other forms of procedures to relieve pain were still available. The Court agrees with Curran that Petitioner's position amounts to simply a preference for its expert testimony over Curran's expert testimony. Petitioner's criticism of Dr. Tabby's reference to other possible treatments short of surgery as simply variations on the methods that had not worked constitutes an expression of medical opinion offered by Petitioner that is not based on any record testimony. The Court accordingly concludes that the testimony of Dr. Tabby constituted substantial evidence to support the WCJ's finding that Curran did not refuse reasonable medical treatment. The order of the Board is affirmed.

### ORDER

AND NOW, this 16th day of November, 1999, the order of the Workers' Compensation Appeal Board is affirmed.