ALLTEL, INC., Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (Baum),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 2003.
Decided July 23, 2003.

James M. Poerio, Pittsburgh, for petitioner.

Ronald J. Fonner, Greensburg, for respondent.

Before PELLEGRINI, J., COHN, J., and JIULIANTE, Senior Judge.

OPINION BY Judge COHN.

Alltel, Inc. (Employer) petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board), affirming the decision of a Workers' Compensation Judge (WCJ), denying and dismissing Employer's Petition to Suspend Compensation Benefits to Anthony Baum (Claimant). We affirm.

The relevant facts are as follows. On October 4, 1993, Claimant was injured in the course and scope of his employment as a heavy duty auto mechanic. Claimant sustained an injury to his neck while removing a tire from a truck. In December 1993, Claimant underwent surgery on the work-related herniated cervical disc at level C6–7, which eliminated his left arm pain and numbness and reduced his neck pain and headaches. Pursuant to a notice of compensation payable, payments for the work-related disc herniation began on December 20, 1993. Under a supplemental agreement, Claimant returned to work in a light-duty capacity on February 23, 1994. His current symptoms of left arm pain, numbness and weakness, neck pain and headaches, began again in November 1994 and have gradually worsened. (WCJ Finding of Fact 11c.) Claimant was laid off by Employer in January 1998, and compensation payments were resumed in May 1998 pursuant to the terms of a July

28, 1998 supplemental agreement.[1] Thereafter, in June 2000, Employer filed the present suspension petition alleging that, as of April 13, 2000, Claimant refused to undergo reasonable surgical treatment for his work injury and, thereby, forfeited his right to disability benefits. Important for our purposes, in December of that same year an amended notice of compensation payable was issued and it reflected that Claimant's headaches were work-related.

■ In support of its petition, Employer presented the deposition testimony of Howard J. Sentner, M.D., board certified in neurological surgery. Claimant submitted the testimony of Daniel J. Muccio, M.D., also board certified in neurosurgery. Both doctors reviewed diagnostic imaging studies of Claimant's cervical spine,[2] both recommended surgical treatment, but with different approaches.[3] The WCJ found both procedures to be low risk,[4] and to have a high probability (80% likelihood) of eliminating or significantly reducing Claimant's radicular symptoms (left arm pain, numbness, and weakness), but only a 50% chance of relieving Claimant's neck pain and headaches. (WCJ Finding of Fact 11i.) The WCJ rejected Dr. Sentner's testimony that Claimant would be able to return to his pre-injury job. (WCJ Finding of Fact 12.) Instead, the WCJ found Claimant's testimony credible that the headaches are aggravated by light movement of his arms, shoulders, and neck, that his headaches contributed substantially to the restrictions, and that the headaches alone are sufficient to limit his ability to work. (WCJ Findings of Fact 13, 14.) She also stated, "[n]either surgeon testified that the claimant's ability to work would still improve if only the radicular symptoms improved." (WCJ Finding of Fact 14.) Therefore, she concluded that Employer failed to establish that either of the recommended surgical procedures constituted reasonable treatment, since neither one had a high probability of relieving or improving all of Claimant's disabling symptoms. She also concluded that Employer failed to establish that, if only Claimant's radicular symptoms were reduced, the recommended surgeries would still improve Claimant's ability to work. Accordingly, she denied the Petition to Suspend Benefits. Employer appealed to the Board, which affirmed. This appeal

1. The gap in payment from January through May of 1998 is due to certain salary payments made pursuant to the relevant collective bargaining agreement and to certain credits that were, therefore, owed to Employer. None of these matters are pertinent to the appeal here.

2. The WCJ found Claimant's disc at level C5–6 was herniated, causing a significant compression of the nerve root (WCJ Finding of Fact 11e.) Dr. Sentner and Dr. Muccio agreed that the latest imaging studies revealed herniation at level C7–T1, (WCJ Finding of Fact 11f), but disagreed about the significance of the finding. Dr. Sentner felt significant nerve root compression at C7–T1 was contributing to Claimant's symptoms, while Dr. Muccio felt some compression was being produced at level C7 T1, but that Claimant's symptoms were due to the herni-ated disc at C5–6. The condition at C5–6 is causally related to Claimant's work injury (WCJ Finding of Fact 11e.) Claimant's headaches are due to spasm of the cervical muscles caused by compression. (WCJ Finding of Fact 11g.)

3. Dr. Muccio recommended an anterior cervical discectomy with a fusion only at level C5–6, while Dr. Sentner recommended that a posterior approach in the form of a keyhole hemilaminectomy or foraminotmy be performed at both C5–6 and C7–T1 levels. (WCJ finding 11h.)

4. Both procedures carry a small risk of infection (1–2% chance), spinal fluid leakage, and anesthesia complications. (WCJ Finding of Fact 11j.)

followed.[5]

Employer argues that the Board's decision is not supported by substantial evidence. We disagree.

Preliminarily, we note that where the Board takes no additional evidence, the ultimate fact finder is the WCJ, whose findings of fact, if supported by substantial evidence, must be accepted. *Moore v. Workmen's Compensation Appeal Board (Appeal of Reading Paperboard Corp.)*, 539 Pa. 333, 652 A.2d 802 (1995). It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa.Cmwlth.1998).

Employer specifically asserts that the WCJ erred in her findings regarding the efficacy of the proposed surgical treatment and Claimant's ability to work as a result of the treatment. Section 306 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531, states in relevant part that

If the employee shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal.

77 P.S. § 531(8).

This Section requires an employer to pay for reasonable medical treat-

ment, while imposing a duty upon the employee to avail himself of these services. *Joyce Western Corp. v. Workmen's Compensation Appeal Board (Fichtorn)*, 518 Pa. 191, 200, 542 A.2d 990, 995 (1988). A claimant who declines to avail himself of reasonable medical or surgical procedures to ameliorate his condition should not be permitted to collect benefits for a permanent loss, because the Act was not designed to permit employees to elect between compensation and cure. *Id.* at 201, 542 A.2d at 995. In *Muse v. Workmen's Compensation Appeal Board*, 514 Pa. 1, 7, 522 A.2d 533, 537 (1987), our Supreme Court stated that

The purpose of the statute is to provide cure where it can reasonably be done by medical arts for the benefit of the claimant, that he not be handicapped in his health or his prospects for gainful and fulfilling employment.... Who can be cured and won't soon drys [sic] sympathy and wearies the most willing helpers. One ought not in any context avoid reasonable medical procedures to cure infirmities that are a burden to life and the prospects of life.

The focus of the statute is on the reasonableness of the services offered. *Id.* at 7, 522 A.2d at 536. However, what constitutes reasonable medical treatment will depend on a factual inquiry conducted by the WCJ. *Id.* To establish reasonableness, the evidence submitted by the employer must show that the recommended surgery (1) involves minimal risk to the patient and (2) offers a *high probability* of success. *Id.* at 6, 522 A.2d at 536 (emphasis added).

---

5. Our scope of review where, as here, both parties have presented evidence is limited to whether the findings of fact are supported by substantial evidence and whether there has been any constitutional violation or legal error. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.

Cmwlth.436, 550 A.2d 1364 (1988). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa.Cmwlth.75, 591 A.2d 762, 764 n. 5 (1991).

The claimant's reasons for refusing surgery are irrelevant when the proposed surgery itself is not reasonable under the forfeiture provision of Section 306(f). *Textron, Inc. v. Workmen's Compensation Appeal Board (DeCapria)*, 149 Pa.Cmwlth. 516, 613 A.2d 626, 629 (1992).

 The WCJ in the case *sub judice* found that both recommended surgical procedures were low risk. However, as noted above, the inquiry does not end there. To determine whether the recommended medical treatment is reasonable, we must also consider whether it is highly probable that it will cure the claimant's health problem and enhance the claimant's prospects for gainful and fulfilling employment. *Kneas v. Workmen's Compensation Appeal Board (Cross Country Clothes)*, 685 A.2d 248, 250 (Pa.Cmwlth. 1996), *petition for allowance of appeal denied*, 548 Pa. 650, 695 A.2d 788 (1997).

In *Davis v. Workers' Compensation Appeal Board (Acme Markets, Inc.)*, 711 A.2d 1096, 1099 (Pa.Cmwlth.1998), the WCJ found a doctor's opinion persuasive that, with surgery, the claimant had a 90% chance or better of full or near full recovery, immediate and significant improvement in his condition, and subsequent return to work. Thus, in that case, the refusal of surgery required a forfeiture of benefits. *Accord Donton v. Workmen's Compensation Appeal Board (Prestolite Battery)*, 125 Pa.Cmwlth.324, 557 A.2d 450 (1989) (85% chance of success of surgery with subsequent return to work considered reasonable); *Robinson v. Workmen's Compensation Appeal Board (Lindsey)*, 139 Pa.Cmwlth.82, 589 A.2d 778 (1991) (90% success rate for surgery and ability to return to work within three months).

In contrast, in *Kneas*, the claimant refused to undergo surgery for his work-related injury. The employer's doctor testified that, while the surgery would pro-vide an 80% chance of a good to excellent result, as measured by subjective relief of pain and improvement in function, the claimant's prospects for further employment after surgery were "fairly dim." *Id.* at 249. This Court concluded that surgery in that case was not reasonable because, *inter alia*, no medical evidence existed to show that, even with the surgery, it was probable that the claimant's prospects for gainful and fulfilling employment would increase. *Id.* at 251. In *Textron*, credible testimony established that there was a 50% chance or a "toss up" as to whether the surgery would really be of any benefit to the claimant. The court stated that a 50% chance of long-term benefit from surgery does not render the procedure reasonable, and surgery offering no significant improvement is not reasonable. Similarly, in *Southwest Health Systems/Westmoreland Home Health v. Workmen's Compensation Appeal Board (Peterson)*, 157 Pa.Cmwlth.682, 630 A.2d 964 (1993), surgery that carried a 70% overall success rate, but a 50% chance of recurrence of a work-related infection, did not represent a high probability of success, and was not reasonable.

In the present case, there is only a 50% chance that the recommended surgical procedure will improve Claimant's condition to the point that he would be able to return to the light-duty job he was previously released to perform. Since Claimant's headaches control his employment capability, (Finding of Fact 14), and since surgery would only provide a 50% chance of improving his headaches to the point where he could return to work, the surgery here only provides, at best, a 50% likelihood of ability to return to work. We hold that, as a matter of law, fifty percent does not represent a "high probability" as required by *Muse* and *Kneas* and that the case is closer to *Southwest, Kneas,* and

*Textron* than to *Davis, Donton,* and *Robinson.*[6]

Having concluded that Employer did not meet the burden to show the recommended surgery has a high probability of improving all of Claimant's disabling symptoms and, in particular, Claimant's controlling condition, his headaches, we affirm the order of the Board.

### ORDER

**NOW,** July 23, 2003, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby affirmed.

---

**6.** The WCJ here found that neither surgeon testified that Claimant's ability to work would still improve if only the radicular symptoms improved. (WCJ Finding of Fact 14.) Both witnesses stated that the procedures involved would allow Claimant to increase his activity level from his present restriction to the light-duty work he was previously released to perform after the 1993 surgery, but only if surgery was, in fact, successful in improving the headaches. Dr. Sentner stated that Claimant would be more employable, (N.T. 18), and Dr. Muccio stated that Claimant's headaches would improve to the point that he could go back to the light-duty job, but only if the surgery was successful in improving the headaches. (N.T. 25.) However, such improvement is moot since a mere 50% chance of this improvement transpiring with regard to Claimant's headaches to allow him, at maximum, to perform light-duty work, does not satisfy the "high probability" requirement.